FEDERAL SIGN, Petitioner,

v.

TEXAS SOUTHERN UNIVERSITY,
Respondent.

No. 94–1317.

Supreme Court of Texas.

Argued Nov. 28, 1995.

Decided June 20, 1997.

Rehearing Overruled Oct. 2, 1997.

Robert A. Plessala, Houston, for Petitioner.

Patrick J. Feeney, Carey E. Smith, Austin, for Respondent.

BAKER, Justice, delivered the opinion of the Court in which PHILLIPS, Chief Justice, GONZALEZ, HECHT, CORNYN and OWEN, Justices, join.

The issue in this case is whether the sovereign immunity doctrine precludes Federal Sign, a private party, from suing Texas Southern University, a state institution, for breach of contract without legislative permission. The trial court denied TSU's plea to the jurisdiction, which was based on sovereign immunity from suit. Following a jury trial, the trial court rendered judgment on the verdict for Federal Sign. TSU appealed, urging as its sole point of error that the trial court erred by denying its plea to the jurisdiction. TSU asserted that sovereign immunity bars contract claims against the State. The court of appeals agreed and reversed the trial court and remanded the case to the trial court with instructions to dismiss. We agree with the court of appeals. Accordingly, we affirm the court of appeals' judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

In late 1988, TSU began accepting bids for the construction and delivery of basketball scoreboards for its new Health and Physical Education facility. Federal Sign submitted a bid for the contract. Federal Sign secured the Pepsi–Cola Company as sponsor. In early 1989, TSU accepted Federal Sign's bid. TSU instructed Federal Sign to begin building the scoreboards. Following TSU's instructions, Federal Sign began building the scoreboards. However, in September 1989, before Federal Sign delivered anything to TSU, TSU notified Federal Sign that Federal Sign's bid was unacceptable and told Federal Sign that TSU intended to pursue other avenues to secure the scoreboards. Later, TSU contracted with Spectrum Scoreboards and Coca–Cola for the scoreboards.

In early 1990, Federal Sign sued TSU. Federal Sign alleged TSU breached the contract and violated the competitive bidding and open meeting laws. Federal Sign sued for damages of $67,481 in lost profits and $22,840 in expenses. TSU answered Federal Sign's suit and filed a plea to the jurisdiction. TSU asserted that its sovereign immunity

barred Federal Sign's suit. The trial court originally abated Federal Sign's action until Federal Sign obtained legislative consent to sue.

Rather than obtaining legislative consent to sue, Federal Sign moved for rehearing. Federal Sign asserted that it did not need legislative consent to sue TSU under the facts of the case. The trial court granted Federal Sign's motion and set aside the abatement order. The parties tried the case to a jury. The trial court rendered judgment for Federal Sign based on the jury's finding of a breach of contract and awarded Federal Sign the damages the jury found.

TSU appealed, contending that the trial court erred by overruling TSU's plea to the jurisdiction. TSU argued that sovereign immunity barred Federal Sign's contract claims. The court of appeals agreed and reversed the trial court's judgment. The court of appeals remanded the case to the trial court with instructions to dismiss Federal Sign's suit.

We granted writ of error to determine Federal Sign's claims that the court of appeals erred in holding that, absent legislative consent, TSU was immune from suit because: (1) Federal Sign's allegation that TSU violated state laws in connection with the Federal Sign contract stated a claim for which specific legislative consent to sue was not necessary; (2) TSU waived immunity from suit and legislative consent was unnecessary when TSU entered into a contract with a private citizen; and (3) sovereign immunity from contract claims violates the Texas Constitution's Open Courts and Due Course of Law provisions.

## II. FEDERAL SIGN'S STATE LAW CLAIMS

Federal Sign first asserts that because it alleged causes of action for which it did not need legislative permission to sue TSU, the trial court correctly set aside the abatement order and allowed the case to proceed to trial. Federal Sign argues that it did not need legislative consent to sue TSU because its claims included allegations of TSU's state law violations. In its original petition, in addition to its breach of contract claim, Fed-

eral Sign alleged that TSU officials violated the Competitive Bidding on Contracts Statute, TEX. EDUC.CODE § 51.907, and the Open Meetings Act, TEX.REV.CIV. STAT. art. 6252–17 (Vernon 1970), *repealed by* Act or Apr. 30, 1983, 73rd Leg., R.S., ch. 268, § 46(1), 1993 Tex. Gen. Laws 583, 986.

### A. APPLICABLE LAW

■ A private litigant does not need legislative permission to sue the State for a state official's violations of state law. *Director of the Dept. of Agric. & Env't v. Printing Indus. Ass'n of Texas,* 600 S.W.2d 264, 265–66 (Tex.1980)(holding legislative consent not required for suit for injunctive relief against state agency to halt unauthorized printing equipment and printing activities); *Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.,* 372 S.W.2d 525, 530 (Tex.1963)(holding legislative consent not required for declaratory judgment suit against Highway Commission to determine the parties' rights); *Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945)(holding legislative consent not required for declaratory judgment suit against State Comptroller to determine parties' rights under tax statute). A state official's illegal or unauthorized actions are not acts of the State. *See, e.g., Director of the Dep't of Agric. & Env't,* 600 S.W.2d at 265–66; *Texas Highway Comm'n,* 372 S.W.2d at 525; *Cobb,* 190 S.W.2d at 712. Accordingly, an action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars. *See Cobb,* 190 S.W.2d at 712. In other words, we distinguish suits to determine a party's rights against the State from suits seeking damages. A party can maintain a suit to determine its rights without legislative permission. *See Cobb,* 190 S.W.2d at 712.

### B. APPLICATION OF LAW TO FACTS

■ Here, Federal Sign argues that the trial court correctly overruled TSU's plea to the jurisdiction because its live pleadings, when the trial court lifted the abatement order, included Competitive Bidding and Open Meetings Acts violations—potential

state law violations. *See Director of Dept. of Agric. and Env't,* 600 S.W.2d at 265–66; *Texas Highway Comm'n,* 372 S.W.2d at 530; *Cobb,* 190 S.W.2d at 712. However, even though Federal Sign may not have needed legislative permission to sue TSU on these claims, Federal Sign still sought damages for its breach of contract claim. Consequently, because Federal Sign's suit sought monetary damages from the State, its breach of contract claim did not fit under the rule established in *Cobb, Director of Department of Agriculture and Environment,* and *Texas Highway Commission.* Therefore, Federal Sign's state violation claims did not dispense with the necessity that Federal Sign secure legislative consent to sue TSU for damages for breach of contract.

### III. SOVEREIGN IMMUNITY

Federal Sign next argues that the court of appeals erred by reversing the trial court's judgment based on sovereign immunity. Federal Sign first argues that the State waives its sovereign immunity protection when it enters into a contract with a private citizen. Then Federal Sign argues that, if sovereign immunity protects the State from breach of contract suits, any contract the State enters into with a private citizen is illusory and void because it lacks mutuality. Lastly, Federal Sign contends that if sovereign immunity is the law in Texas, then "this court should act to declare in clear and unmistakable language that the doctrine of sovereign immunity does not apply in any form when the State enters into a contract with a citizen."

### A. SOVEREIGN IMMUNITY AND STATE CONTRACTS

#### 1. Applicable Law—Sovereign Immunity

▆▆ This Court has long recognized that sovereign immunity, unless waived, protects the State of Texas, its agencies and its officials from lawsuits for damages, absent legislative consent to sue the State. *Director of the Dep't of Agric. & Env't,* 600 S.W.2d at 265; *Griffin v. Hawn,* 161 Tex. 422, 341 S.W.2d 151, 152–53 (1960); *Hosner v. DeYoung,* 1 Tex. 764, 769 (1847). Sovereign immunity embraces two principles: immunity from suit and immunity from liability. *Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813 (Tex.1970). First, the State retains *immunity from suit,* without legislative consent, even if the State's liability is not disputed. *Missouri Pac. R.R.,* 453 S.W.2d at 813. Second, the State retains *immunity from liability* though the Legislature has granted consent to the suit. *Missouri Pac. R.R.,* 453 S.W.2d at 813.

▆▆ *Immunity from suit* bars a suit against the State unless the State expressly gives its consent to the suit. *Missouri Pac. R.R.,* 453 S.W.2d at 813; *see also* TEX. CIV. PRAC. & REM.CODE § 101.025; TEX. CIV. PRAC. & REM.CODE §§ 107.001–.005. In other words, although the claim asserted may be one on which the State acknowledges liability, this rule precludes a remedy until the Legislature consents to suit. *Missouri Pac. R.R.,* 453 S.W.2d at 813. The State may consent to suit by statute or by legislative resolution. *Missouri Pac. R.R.,* 453 S.W.2d at 814. Legislative consent for suit or any other sovereign immunity waiver must be "by clear and unambiguous language." *University of Texas Med. Branch at Galveston v. York,* 871 S.W.2d 175, 177 (Tex.1994); *Duhart v. State,* 610 S.W.2d 740, 742 (Tex.1980).

▆▆ *Immunity from liability* protects the State from judgments even if the Legislature has expressly given consent to the suit. *Missouri Pac. R.R.,* 453 S.W.2d at 813. In other words, even if the Legislature authorizes suit against the State, the question remains whether the claim is one for which the State acknowledges liability. *State v. Isbell,* 127 Tex. 399, 94 S.W.2d 423, 425 (1936); *see also Governmental Immunity From Suit and Liability in Texas,* 27 TEX. L. REV. 337, 342 (1949). The State neither creates nor admits liability by granting permission to be sued. TEX. CIV. PRAC. & REM.CODE § 107.002 ("A resolution granting permission to sue does not waive to any extent immunity from liability."); *Isbell,* 94 S.W.2d at 424–25. However, when the State contracts, the State is liable on contracts made for its benefit as if it were a private person. *State v. Elliott,* 212 S.W. 695, 697–98 (Tex.Civ.App.—Galveston 1919, writ ref'd). Consequently, when

the State contracts with private citizens it waives *immunity from liability.*

### 2. Conflict of Authority— *Fristoe v. Blum*

However, there is a conflict among the courts of appeals on whether the State, by entering into a contract with a private citizen, waives *immunity from suit* by the fact that it has made the contract and thus legislative consent for suit is not necessary. A majority of the cases that have considered the issue hold that when the State contracts with a private citizen, it waives *immunity from liability,* but retains *immunity from suit. See, e.g., Alcorn v. Vaksman,* 877 S.W.2d 390, 403 (Tex.App.—Houston [1st Dist.] 1994, writ denied); *Green Int'l, Inc. v. State,* 877 S.W.2d 428, 432–33 (Tex.App.— Austin 1994, writ dism'd by agr.); *Courtney v. University of Texas Sys.,* 806 S.W.2d 277, 282–83 (Tex.App.—Fort Worth 1991, writ denied); *Atchison, Topeka & Santa Fe Ry. v. Texas State Dep't of Highways and Pub. Transp.,* 783 S.W.2d 646, 648 (Tex.App.— Houston [14th Dist] 1989, no writ); *Texas Dep't of Human Servs. v. Trinity Coalition, Inc.,* 759 S.W.2d 762, 764 (Tex.App.—El Paso 1988), *cert. dism'd,* 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990); *Miller v. Hood,* 536 S.W.2d 278, 284 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.).

However, other cases hold that the State waives its sovereign immunity, including immunity from suit, when it contracts with private citizens. *See, e.g., Ntreh v. University of Texas at Dallas,* 936 S.W.2d 649, 654 (Tex.App.—Dallas 1996, writ requested); *Texas Dept. of Health v. Texas Health Ent.,* 871 S.W.2d 498, 506 (Tex.App.—Dallas 1993, writ denied); *Couch v. Ector County,* 860 S.W.2d 659, 661 (Tex.App.—El Paso 1993, no writ); *Industrial Constr. Management v. DeSoto Indep. Sch. Dist.,* 785 S.W.2d 160, 163–164 (Tex.App.—Dallas 1989, no writ); *Board of Regents of Univ. of Texas v. S & G Constr. Co.,* 529 S.W.2d 90, 97 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.); *Cummins v. Board of Trustees of Eanes Indep. Sch. Dist.,* 468 S.W.2d 913, 917 (Tex.Civ.App.—Austin 1971, no writ).

Despite the different conclusions these courts reached, all relied on *Fristoe v. Blum,* 92 Tex. 76, 45 S.W. 998 (1898), for their authority. Yet, *Fristoe* did not involve a breach of contract claim against the State nor did it directly involve sovereign immunity. In fact, *Fristoe* does not explicitly discuss either immunity from liability or immunity from suit. Recognizing that *Fristoe* did not involve the issue before the Court, we nonetheless discuss *Fristoe* because the conflicting courts of appeals and the parties base their conclusions upon their interpretations of *Fristoe.*

*Fristoe* involved a trespass to try title suit by Leon Blum against J.W. Fristoe. *Fristoe,* 45 S.W. at 999. In 1883, I.M. Bennick bought land from the State under a contract to purchase. In 1891, Bennick transferred the land to D.P. Gay. Then, in 1894 Blum purchased the land from Gay. No one paid the interest on the purchase money under Bennick's original purchase for 1892. In mid–1895, the commissioner of the land office declared the contract of purchase forfeited. Fristoe purchased the land from the State in late 1895. Consequently, Fristoe and Blum each claimed title to the land that originated with the State. In discussing the property's rightful owner, the Court stated "[a] clear understanding of the relation in which the [S]tate stands to the purchasers in these contracts will greatly facilitate a proper solution of the questions upon which this case depends." *Fristoe,* 45 S.W. at 999. Despite this avowed goal, this discussion in *Fristoe* has led to anything but a "clear understanding" of sovereign immunity in the breach of contract context. Because the discussion was not necessary to resolve the issue the *Fristoe* Court faced, it is dicta.

The conflicting courts of appeals, as well as the parties in this case, have tried to fashion the *Fristoe* dicta into support for each side's respective view of sovereign immunity. Although one may read parts of *Fristoe* to support the conflicting views, *Fristoe* taken as a whole, says nothing about whether the State waives or retains its sovereign immunity when it contracts with private citizens.

■ *Fristoe* stated that when the State "becomes a suitor in its own courts, or a

party to a contract with citizens, the same law applies to it as under like conditions governs the contracts of an individual." *Fristoe*, 45 S.W. at 999. The *Fristoe* Court relied upon three Texas cases for this proposition. *See State v. Snyder*, 66 Tex. 687, 18 S.W. 106 (1886); *State v. Purcell*, 16 Tex. 305 (1856); *State v. Kroner*, 2 Tex. 492 (1847). None of these cases involved breach of contract suits against the State or the sovereign immunity doctrine. These cases stand only for the unremarkable proposition that "a State or other sovereignty, when it becomes a litigant in its own courts, must have its rights determined by the same principles applicable to other litigants." *Snyder*, 66 Tex. at 700, 18 S.W. 106; *Purcell*, 16 Tex. at 309–10 (holding that the State must comply with statute of limitations like other litigants); *Kroner* 2 Tex. at 493 (holding the State is not immune from transcript filing deadlines on appeal). Further, this statement is true, at least with certain exceptions which need not be detailed here (such as, the State cannot contract away its police power). *See City of Arlington v. City of Fort Worth*, 844 S.W.2d 875, 878 (Tex.App.—Fort Worth 1992, writ denied); *Pittman v. City of Amarillo*, 598 S.W.2d 941, 945 (Tex.Civ.App.— Amarillo 1980, writ ref'd n.r.e.). This statement, however, has nothing to do with immunity from suit. To state what happens *if* the State consents to be sued says nothing about whether the State consents to be sued.

*Fristoe* then quoted from three out-of-state opinions. *Carr v. State*, 127 Ind. 204, 26 N.E. 778, 779 (1891); *People v. Stephens*, 71 N.Y. 527, 549–50 (1978) (Allen, J., concurring); and *Morton, Bliss & Co. v. Comptroller Gen.*, 4 S.C. 430, 448 (1873). Each of these cases includes language that can be used to support or dispute whether the State waives immunity from suit when it contracts. However, when read together, these cases show only that the *Fristoe* Court did not intend to speak on the sovereign immunity issue.

*Carr* involved a suit on certificates, similar to bonds, which the court held that the State was required to pay because the Legislature had appropriated the funds to pay them. *Fristoe* quoted *Carr* as holding a State's contracts "are interpreted as the contracts of individuals are, and the law which measures individuals' rights and responsibilities measures, with few exceptions, those of a state whenever it enters into an ordinary business contract." *Carr*, 26 N.E. at 779. However, *Fristoe* did not include *Carr*'s language that qualified this passage. The *Carr* court stated:

> There is one essential and far-reaching difference between the contracts of citizens and those of sovereigns; not, indeed, as to the meaning and effect of the contract itself, but as to the capacity of the sovereign to defeat the enforcement of its contract. The one may defeat enforcement, but the other cannot. This result flows from the established principal that a state cannot be sued.

*Carr*, 26 N.E. at 779. Accordingly, *Carr* cannot stand for the proposition that the State waives immunity from suit by entering into a contract.

*Stephens* involved a suit by the State for conspiracy, not a suit against the State. Further, the *Fristoe* Court only quoted from a concurring opinion. Consequently, *Stephens* neither supports nor contradicts either position. *See Stephens*, 71 N.Y. at 549–550.

*Morton* involved a bondholder's suit to force local officials to levy a tax to pay bonds because the State Legislature had required it by statute. Therefore, *Morton* involved an issue more akin to suits in which an individual sues a State official that has not complied with a statute or law. As we discussed in Part II of our opinion, this type of suit is allowed without legislative permission. *See Director of the Dept. of Agric. & Env't*, 600 S.W.2d at 265–66. Consequently, any language in *Morton* on waiver of immunity from suit is dicta and cannot be used to support an argument that the State either waives or retains immunity from suit when it contracts with private citizens.

While the courts of appeals and the parties here quote *Fristoe* for the parts they like, when read as a whole, we cannot read *Fristoe* as deciding whether the State retains or waives immunity from suit in breach of contract cases. Therefore, it is simply impossible to base our decision on *Fristoe*.

### 3. Immunity from Suit

*Fristoe* aside, this Court has directly and affirmatively considered this issue without citing *Fristoe.* The three times this Court considered sovereign immunity in the breach of contract context, we held that the State is immune from suit arising from breach of contract suits. *Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.,* 453 S.W.2d 812, 813–14 (Tex.1970); *W.D. Haden Co. v. Dodgen,* 158 Tex. 74, 308 S.W.2d 838, 839–41 (1958); *Herring v. Houston Nat'l Exch. Bank,* 114 Tex. 394, 269 S.W. 1031, 1033 (1925).

This Court first considered the sovereign immunity issue in the breach of contract arena in *Herring v. Houston Nat'l Exch. Bank.* In *Herring,* Houston National Exchange Bank sued the Texas Prison Commission to recover money that the bank alleged the Commission had not paid for the purchase of three acres of land. *Herring,* 269 S.W. at 1031. This Court held: "It is an attribute of sovereignty, and it is well established and generally conceded that the sovereignty cannot be sued in its courts without its consent." 269 S.W. at 1031.

In *Haden,* the W.O. Haden Company operated under a State permit to take mudshell from Galveston Bay. When the Game & Fisheries Commission of Texas changed the terms of the permit, W.O. Haden sued for a declaration of its rights under what it contended to be a contract. *Haden,* 308 S.W.2d at 839. This Court held that a suit "seeking enforcement of contract rights is necessarily a suit against the State which cannot be maintained without legislative permission." *Haden,* 308 S.W.2d at 842.

Then, in *Missouri Pacific R.R.,* Missouri Pacific sought indemnity from the Brownsville Navigation District for its liability in a wrongful death suit under a "written track agreement" with the Brownsville Navigation District. *Missouri Pac. R.R.,* 453 S.W.2d at 813. This Court again recognized that the State is generally immune from suit for breach of contract. However, the Court held that a statute that provided that the Navigation District could "sue and be sued" met the legislative permission requirement. *Missouri Pac. R.R.,* 453 S.W.2d at 813.

Therefore, when the State contracts with private citizens, the State waives only *immunity from liability.* However, a private citizen must have legislative consent to sue the State on a breach of contract claim. The act of contracting does not waive the State's *immunity from suit.* Accordingly, we expressly overrule any cases that hold to the contrary.

### 4. Application of Law to Facts

Here, Federal Sign did not receive legislative permission to sue TSU. Therefore, the State did not waive its immunity from suit and Federal Sign could not maintain a breach of contract suit against TSU. *See Missouri Pac. R.R.,* 453 S.W.2d at 813; *W.D. Haden & Co.,* 308 S.W.2d at 842. Accordingly, the court of appeals correctly held that sovereign immunity precluded Federal Sign's suit.[1]

## B. Contracts Between The State And Private Citizens

Federal Sign also asserts that, if the State is immune from suit, then any contract the State enters is void because it lacks mutuality. Federal Sign argues the contracts are void because they lack both mutuality of obligation and mutuality of remedy.

### 1. Applicable Law

A contract must be based upon a valid consideration, in other words, mutuality of obligation. *See Texas Gas Util. Co. v. Barrett,* 460 S.W.2d 409, 412 (Tex.1970); *Langley v. Norris,* 141 Tex. 405, 173 S.W.2d 454, 458 (1943); *Texas Farm Bureau Cotton Ass'n v. Stovall,* 113 Tex. 273, 253 S.W. 1101, 1105 (1923). Consideration is a bargained for exchange of promises. *Roark v. Stall-*

---

1. We hasten to observe that neither this case nor the ones on which it relies should be read too broadly. We do not attempt to decide this issue in any other circumstances other than the one before us today. There may be other circumstances where the State may waive its immunity by conduct other than simply executing a contract so that it is not always immune from suit when it contracts.

*worth Oil & Gas, Inc.*, 813 S.W.2d 492, 496 (Tex.1991). Consideration consists of benefits and detriments to the contracting parties. *Roark*, 813 S.W.2d at 496. The detriments must induce the parties to make the promises and the promises must induce the parties to incur the detriments. *Roark*, 813 S.W.2d at 496. A contract that lacks consideration, lacks mutuality of obligation and is unenforceable. *See Texas Farm Bureau*, 253 S.W. 1101 at 1105.

▆▆▆▆ Mutuality of remedy is the right of both parties to a contract to obtain specific performance. *See Adams v. Abbott*, 151 Tex. 601, 254 S.W.2d 78, 80 (1952); *Langley v. Norris*, 173 S.W.2d at 458; *Sanderson v. Sanderson*, 130 Tex. 264, 109 S.W.2d 744, 748 (1938). Unlike a contract lacking mutuality of obligation, a contract lacking mutuality of remedy is not illusory and void. *See W.D. Haden & Co.*, 308 S.W.2d at 842. Mutuality of remedy does not concern contractual formation and does not imply that one party lacks a remedy of any kind. *See* Dobbs, HANDBOOK ON THE LAW OF REMEDIES 49–52 (1973).

### 2. Application of Law to Facts

▆▆▆▆ Federal Sign promised to build the scoreboards in exchange for TSU's promise to pay for them. These promises represented the respective benefits and detriments, or the bargained for exchange, necessary to satisfy the consideration requirement. *See Roark*, 813 S.W.2d at 496. Accordingly, valid consideration supported a binding contract between Federal Sign and TSU. *See Roark*, 813 S.W.2d at 496; *Texas Gas Util. Co.*, 460 S.W.2d at 412–13.

▆▆▆▆ Mutuality of remedy does not apply here because specific performance is not an issue. *Adams*, 254 S.W.2d at 80; *Langley*, 173 S.W.2d at 458. That a private citizen must get permission to sue the State for breach of contract has never rendered a State contract illusory in Texas. *See W.D. Haden & Co.*, 308 S.W.2d at 842. "The impotence of private individuals to enforce through the courts their contractual rights against the State, by reason of inability to sue the State without its consent, inheres in every such contract. This impotence, how-

ever, does not affect the binding force of State obligations; nor does it deprive the Legislature of the power to delegate to an appropriate agency authority to create binding contractual obligations against the State." *Ferguson v. Johnson*, 57 S.W.2d 372, 376 (Tex.Civ.App.—Austin 1933, writ dism'd). Secondly, Federal Sign actually has a remedy against TSU—it may sue and recover its damages, if it first obtains legislative permission to do so. *See generally* TEX. CIV. PRAC. & REM.CODE §§ 107.001–.005. Therefore, the court of appeals correctly held that a valid and binding contract existed between Federal Sign and TSU.

### C. LEGISLATIVE CONTROL OF SOVEREIGN IMMUNITY

▆▆▆▆ Lastly, Federal Sign asks this Court to pronounce that sovereign immunity does not preclude private citizens from suing the State for breach of contract. Litigants have repeatedly asked this Court to abrogate one or more aspects of the State's sovereign immunity. However, this Court has uniformly held that it is the Legislature's sole province to waive or abrogate sovereign immunity. *See Guillory v. Port of Houston Auth.*, 845 S.W.2d 812, 813 (Tex.), *cert. denied*, 510 U.S. 820, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993); *Barr v. Bernhard*, 562 S.W.2d 844, 846 (Tex. 1978); *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976); *See also* Greenhill, *Should Governmental Immunity for Torts be Re–Examined, and, If So, by Whom?* 31 Tex. B.J. 1036, 1070 (1968). Today, we again hold that it is the Legislature's province to modify sovereign immunity if it is inclined to do so and therefore refuse Federal Sign's invitation to undertake that task.

### IV. OPEN COURTS AND DUE COURSE OF LAW VIOLATIONS

Federal Sign asserts that if sovereign immunity precludes its breach of contract claim, then applying sovereign immunity violates the Texas Constitution's Open Courts and Due Course of Law Clauses.

▆▆▆▆ Initially, we note that Federal Sign only cited authority supporting its Open

Courts argument. TSU argues that Federal Sign waived any Due Course arguments because it did not cite supporting authority for that argument. We agree that ordinarily failure to brief an argument waives the claimed error. *See* TEX.R.APP. P. 74(f); *Fredonia State Bank v. American Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex.1994). However, when fact issues are not germane to the issue on appeal, and the issue is a law question involving constitutional ramifications, we believe the reviewing court should decide the issue on the merits because of the importance to the issue to the State's jurisprudence. *See Williams v. Khalaf*, 802 S.W.2d 651, 658-59 (Tex.1990). Accordingly, we discuss Federal Sign's Open Courts and Due Course of Law claims.

### A. Open Courts

■■■■■ The Open Courts provision provides that "[a]ll courts shall be open, and every person for any injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. art. I, § 13. The Open Courts provision affords three distinct protections. First, courts must actually be open and operating. *See Runge & Co. v. Wyatt*, 25 Tex.Supp. 291 (1860). Second, citizens must have access to the courts unimpeded by unreasonable financial barriers. *See LeCroy v. Hanlon*, 713 S.W.2d 335, 342 (Tex.1986). Third, our law must afford meaningful legal remedies to our citizens, so the Legislature may not abrogate the right to assert a well-established common law cause of action. *Texas Ass'n of Bus. v. Air Control Bd.*, 852 S.W.2d 440, 448 (Tex. 1993); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355-357 (Tex.1990). The Open Courts provision "applies only to statutory restrictions of a cognizable common law cause of action." *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 499 (Tex.1995); *Moreno*, 787 S.W.2d at 355-56.

■■■■ Federal Sign's Open Courts argument implicates the provision's third guarantee—whether sovereign immunity unconstitutionally deprived Federal Sign of a meaningful legal remedy. Federal Sign complains that this Court, by upholding established sovereign immunity law, would vi-olate the Open Courts provision. Federal Sign does not complain of any legislative action that prevents it from maintaining its suit. Because Federal Sign does not challenge a legislative act that abridges a cognizable common law claim, its Open Courts challenge is without merit. *See Peeler*, 909 S.W.2d at 499.

### B. Due Course of Law

In its brief, Federal Sign argues that the court of appeals' opinion, as applied to the facts in this case, denies Federal Sign its rights under the Due Course of Law provision of our constitution. Federal Sign's assertion is that the doctrine of sovereign immunity from suit denies Federal Sign its *remedy* under the Due Course of Law provision.

■■■■ Our Constitution provides that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. art. I, § 19. Due course of law exists to prevent government from depriving persons of property without notice and hearing. *See Nelson v. Clements*, 831 S.W.2d 587, 589 (Tex.App.—Austin 1992, writ denied). A claim of denial of due course of law is a question of law for the Court's determination. *Nelson*, 831 S.W.2d at 590.

This Court has never directly decided whether requiring legislative consent to sue on a breach of contract in order to waive sovereign immunity to sue is or is not a denial of due course of law under the Texas Constitution. However, decisions interpreting the United States Constitution are instructive and we turn the United States Supreme Court's decisions for guidance in applying the Due Course of Law's guarantees under the Texas Constitution.

The United States Supreme Court has held that where Congress, by statute, had expressly granted beneficiaries of insurance policies permission to sue the United States for benefits, but a subsequent statute repealed all laws granting or pertaining to the insurance that Congress could not repudiate the contract, but it could withdraw consent to

the suit. *See Lynch v. United States,* 292 U.S. 571, 580–82, 54 S.Ct. 840, 844, 78 L.Ed. 1434 (1934). In *Lynch,* beneficiaries of insurance policies issued under a federal statute sued for benefits. The statute as originally passed granted the beneficiaries the right to sue the United States for benefits. A later statute repealed all laws pertaining to the insurance policies. The Supreme Court held:

> Contracts between individuals or corporations are impaired within the meaning of the Constitution whenever the right to enforce them by legal process is taken away or materially lessened. A different rule prevails in respect to contracts of sovereigns. The contracts between a Nation and an individual are only binding on the conscience of the sovereign and have no intentions of compulsive force. They conferred no right of action independent of the sovereign will. The rule that the United States may not be sued without its consent is all embracing.
>
> \* \* \* \* \* \*
>
> Although consent to sue was thus given when the policy issued, Congress retained power to withdraw the consent at any time. For consent to sue the United States is a privilege accorded; not the grant of a property right protected by the Fifth Amendment. The consent may be withdrawn, although given after much deliberation and for a pecuniary consideration. The sovereign's immunity from suit exists whatever the character of the proceeding or the source of the right sought to be enforced.

*Lynch,* 292 U.S. at 580–82, 54 S.Ct. at 844 (citations omitted).

The Court then held that Congress, merely by repudiating its contractual obligation had not withdrawn consent to suit and that it had not done so otherwise. *Lynch,* 292 U.S. at 582, 585–87, 54 S.Ct. at 844, 846–47. Under those circumstances, the Court allowed the plaintiffs to sue for benefits.

In another case involving gold bonds, a bondholder sued the United States as obligor for payment in gold coin as required by the bond's terms rather than in currency as re-quired by a statute passed after the bond issued. *See Perry v. United States,* 294 U.S. 330, 346–47, 55 S.Ct. 432, 433, 79 L.Ed. 912 (1935). Chief Justice Hughes' plurality opinion observed that the United States does not, by executing a contract, consent to be sued for its breach. The Court held:

> When the United States with constitutional authority makes contracts, it has rights and incurs responsibilities similar to those of individuals who are parties to such instruments. There is no difference, except the United States cannot be sued without its consent.
>
> \* \* \* \* \* \*
>
> The fact that the United States may not be sued without its consent is a matter of procedure which does not affect the legal and binding character of its contracts. While the Congress is under no duty to provide remedies to the courts, the contractual obligation still exists and, despite infirmities of procedure, remains binding upon the conscience of the sovereign.

*Perry,* 294 U.S. at 352–54, 55 S.Ct. at 435–36 (citations omitted). The Supreme Court has recently cited both *Lynch* and *Perry* with approval. *See United States v. Winstar Corp.,* —— U.S. ——, ——, 116 S.Ct. 2432, 2455, 135 L.Ed.2d 964 (1996).

 We believe we should reach the same conclusion under our State Constitution. The State's immunity to suit is, purely as a matter of sovereignty, impervious to due process concerns. Moreover, a party contracting with the State is not denied *all* process, or even *due* process, but only *judicial* process.

 Federal Sign, as with any other who contracts with the State, has a remedy— it may seek the Legislature's consent to sue. Our Constitution's guarantee of due course of the law does not obligate the State to provide judicial relief from all its actions. It may retain for itself, through its Legislature, the exclusive power to determine its liabilities, bound by its conscience. Our Legislature has provided the procedure for consent to sue the State. *See* TEX. CIV. PRAC. & REM. Code, §§ 107.001–005. Federal Sign chose not to avail itself of such relief. We conclude

the legislative procedures provide sufficient relief and do not deny constitutional due course of law guarantees. Accordingly, we reject Federal's arguments that TSU's sovereign immunity from suit denies it due course of law.

## V. CONCLUSION

Absent legislative permission to proceed, sovereign immunity precludes Federal Sign's breach of contract suit against TSU. We expressly disapprove of any court of appeals' cases holding to the contrary. We hold that when a contract exists between the State and a private citizen, the same law applies to the State as governs the individual's contract. We hold that sovereign immunity from suit without legislative consent applies to contract claims against the State. We hold that applying sovereign immunity from suit to contract claims against the State does not violate either the Open Courts Provision or the Due Course of Law Provision of the Texas Constitution. We hold that it is the Legislature's province to modify, if at all, the sovereign immunity doctrine. Accordingly, we affirm the court of appeals' judgment.

HECHT, Justice, joined by PHILLIPS, Chief Justice, CORNYN and OWEN, Justices, concurring.

I concur in the Court's opinion. I write separately for three reasons. First, I wish to make plain that the Court's opinion is limited, despite some occasional broad language. Second, while today's decision is supported by precedent, the Court does not explain why it refuses to depart from that precedent despite strong arguments that it should do so. The parties, and the public, are owed this explanation. Third, a word should be said in response to the dissent. The dissent would completely abolish immunity although the Legislature has not only repeatedly refused to do so but has within the past few days crafted mediation and administrative procedures to resolve certain contract disputes with the State.

## I

The immunity issue in this case is a narrow one. It is this: should a court hold that the State, merely by entering into a contract for goods and services, waives immunity from suit for breach of the contract before the other party has tendered performance? That is all we can, and do, decide.

The Court's succinct summary of the facts concerning the parties' dispute omits the following important details that limit the legal issue to be decided. Texas Southern University solicited bids for the manufacture and installation of basketball arena scoreboards to be financed by a corporate sponsor in exchange for advertisement and concession rights. Federal Sign bid $182,506. After several weeks of negotiations, the Pepsi–Cola Company agreed to be the sponsor, and Federal Sign reduced its offer to $158,404. TSU formally accepted the proposal and instructed Federal Sign to begin work immediately so that the scoreboards would be finished as soon as possible. Seven months later, before Federal Sign had delivered anything to TSU, TSU terminated the agreement and contracted instead with Spectrum Scoreboards and Coca–Cola. Federal Sign sued for breach of contract to recover $67,481 lost profits and $22,840 expenses. At trial, a jury found that TSU breached its agreement and that Federal Sign suffered the damages it alleged.

These facts are important for two reasons. First, the subject contract is for goods and services. We do not address whether the State is immune from suit on debt obligations, such as bonds. Second, at the time of TSU's breach (as found by the jury), Federal Sign had not performed. To be sure, Federal Sign purchased equipment for the contract that it could not otherwise use and lost profits it had bargained for. But Federal Sign never tendered performance, never performed services on TSU's property, and never delivered TSU any materials. Would the result be different if Federal Sign had already installed the scoreboards and TSU refused to pay the agreed price? Or if TSU had accepted the scoreboards, acknowledged that Federal Sign had fully complied with the contract, but refused to pay the agreed price? Or if TSU refused to pay in order to force Federal Sign to make a concession on another contract? We do not attempt to decide such hypotheticals today, but they do

suggest that the State may waive immunity by conduct other than simply executing a contract, so that it is not always immune from contract suits.

Categorical statements in the Court's opinion must be read in this context. For example, the Court states that "when the state contracts with private citizens, the state waives only *immunity from liability.*" *Ante* at 406. Later it states: "We hold that sovereign immunity from suit without legislative consent applies to contract claims against the state." *Ante* at 412. These statements do not apply to all contracts—state bonds, for example—or to all circumstances. In short, today's decision does not hold that the State is always immune from suit for breach of contract absent legislative consent; it holds only that the mere execution of a contract for goods and services, without more, does not waive immunity from suit.

## II

I agree with the Court that its decision is supported by *Herring v. Houston National Exchange Bank,* 114 Tex. 394, 269 S.W. 1031 (1925), *W.D. Haden Co. v. Dodgen,* 158 Tex. 74, 308 S.W.2d 838 (1958), and *Missouri Pacific Railroad v. Brownsville Navigation District,* 453 S.W.2d 812 (Tex.1970). But we did not grant Federal Sign's application for writ of error simply to reaffirm past decisions and affirm the court of appeals. Rather, we took the case, while applications for writ of error in two similar cases were pending (*Green International, Inc. v. State,* 877 S.W.2d 428 (Tex.App.—Austin 1994), *writ granted,* 38 Tex. Sup.Ct. J. 404 (March 30, 1995), *writ dism'd,* 39 Tex. Sup.Ct. J. 96 (Nov. 16, 1995) (settled); *Firemen's Insurance Co. v. Board of Regents of the University of Texas System,* No. 95–0924 (filed Sept. 19, 1995, 38 Tex. Sup.Ct. J. 1209)), to consider whether the Court should abolish governmental immunity from suits on contract. The Court does not discuss this issue, except to say that we have repeatedly and recently held that the waiver of governmental immunity—in the sense of granting consent to sue, as opposed to conduct constituting waiver—is a matter addressed to the Legislature. *Ante* at 409; *City of LaPorte v. Barfield,* 898

S.W.2d 288, 291 (Tex.1995); *Guillory v. Port of Houston Auth.,* 845 S.W.2d 812, 813 (Tex. 1993), *cert. denied,* 510 U.S. 820, 114 S.Ct. 75, 126 L.Ed.2d 43 (1993); *Lowe v. Texas Tech Univ.,* 540 S.W.2d 297, 298 (Tex.1976). Federal Sign argues that we should no longer adhere to such precedents. This argument deserves response; it is, after all, the main argument in the case.

There are compelling reasons for this Court to continue to defer to the Legislature. First, the handling of contract claims against the government involves policy choices more complex than simply waiver of immunity. Last year the Texas House of Representatives Committee on Civil Practices surveyed the law of all the other states and concluded that Texas had eight options: retain governmental immunity; waive immunity; waive immunity but exclude awards for attorney fees and consequential damages; waive immunity but prohibit liens on state property; waive immunity for claims under a certain amount; adopt an alternative dispute resolution system for all agencies; resolve all claims by administrative hearing; and create a new special claims court or administrative claims board. TEXAS HOUSE OF REPRESENTATIVES, INTERIM REPORT TO THE 75TH LEGISLATURE 6–8 (1996). The committee's survey of other states' laws shows that most states waive immunity from suit on contracts, but that in only five states was that waiver by the judiciary. *Id.* at 18–29. The committee noted that until 1987 the Legislature freely granted consent to sue on contract claims, but that since then the Legislature has had "to reexamine the financial impact these suits could have on the limited resources of the state." *Id.* at 9. In four legislative sessions from 1989 through 1995, 173 resolutions were introduced for consent to sue under chapter 107 of the Civil Practice and Remedies Code; only nine were passed. *Id.* Thus, the Legislature has taken a more active role in determining what claims have sufficient merit that they should be prosecuted.

The Legislature has repeatedly considered whether to waive all governmental immunity for contract suits and has refused to do so, although as *MOPAC* demonstrates, it may have done so in certain situations, such as by

authorizing particular agencies to be sued. *MOPAC*, 453 S.W.2d at 813. In 1991 two bills were introduced to waive all governmental immunity for contract actions. Tex. S.B. 1072, 72nd Leg., R.S. (1991); Tex. H.B. 2154, 72nd Leg., R.S. (1991). They did not pass. In 1995 a bill was introduced to require state agencies to mediate construction contract disputes. Tex. H.B. 1369, 74th Leg., R.S. (1995). It also did not pass. In the legislative session just ended two bills were introduced to waive or modify governmental immunity for all contract actions. Tex. S.B. 846, 75th Leg., R.S. (1997); Tex. H.B. 2737, 75th Leg., R.S. (1997). Neither was reported from committee. Two bills requiring arbitration of prison construction contract disputes were not reported from committee. Tex. S.B. 1443, 75th Leg., R.S. (1997); Tex. H.B. 3352, 75th Leg., R.S. (1997). Another bill that, as originally introduced, would have waived governmental immunity for contract actions but, as amended, provided for administrative hearings and decisions on most contract disputes also did not pass. Tex. H.B. 172, 75th Leg., R.S. (1997).

One bill that did pass this session shows that the Legislature continues to assert governmental immunity from contract suits while crafting other procedures to resolve contract disputes with the State. Senate Bill 694, entitled the Governmental Dispute Resolution Act, to be codified as chapter 2008 of the Government Code, authorizes state agencies to provide for alternative dispute resolution of contract disputes. Tex. S.B. 694, 75th Leg., R.S. (1997). The bill expressly provides that it "does not waive immunity from suit". *Id.* § 2008.005(a). The bill, which awaits the Governor's signature, demonstrates the complex and competing policies involved in resolving the State's contract disputes. Simply abolishing immunity cannot accommodate those policies.

Second, not all the factors that weigh in determining the State's liability on its contracts can be assessed in a judicial proceeding. Must the State honor all long-term contracts when they no longer serve the public interest, continuing to spend tax revenues on matters that no longer benefit the people? If so, then the government's ability to re-spond to changing conditions for the welfare of the people as a whole is impaired. Moreover, each succeeding administration may become increasingly bound by the contracts of prior administrations with no way of escape except payment of public resources. Harold J. Krent, *Reconceptualizing Sovereign Immunity*, 45 VANDERBILT L. REV. 1529, 1530 (1992). Would state officials be unduly anxious to conform to judicial policy wishes if they knew that judges could determine the State's liability for millions of dollars? *See id.* Would the prospect of liability smother policy initiatives based upon truly changed circumstances? *See id.* at 1530–1531. Governmental immunity rests on such concerns and not simply on the archaic idea that "the king can do no wrong". Such political concerns pertain to the nature of democratic government and cannot be assessed by a jury in a contract suit. They are best determined by the people's representatives in the Legislature.

Third, even if the Court were to abolish governmental immunity from contract suits, successful plaintiffs still could not be paid without legislative appropriation. Each appropriation bill passed by the Legislature typically contains a section on judgments. As an example, the 1995 bill provides in part:

> None of the funds appropriated by this Act may be expended for payment of any judgment or settlement prosecuted by or defended by the Attorney General and obtained against the State of Texas or any state agency, except pursuant to this section or where it is specifically provided in an item or items of appropriation that the funds thereby appropriated or expenditures therein authorized may be used for the payment of such judgments.

Act of May 25, 1995, 74th Leg., R.S., ch. 1063, art. IX, § 56, 1995 Tex. Gen. Laws 5242, 6097. To abolish immunity for contract actions would not allow recovery against the government without its consent.

Finally, the Legislature has long provided a means of redress for contract claimants against the State by allowing petitions for consent to sue the State for breach of contract. Ten years ago the Legislature formalized the procedure for such petitions by

adopting chapter 107 of the Civil Practice and Remedies Code. It "applies to resolutions granting permission to sue the state or any of the agencies of government that collectively constitute the government of this state, including ... institutions of higher learning", like TSU. Tex. Civ. Prac. & Rem. Code § 107.001. While the judiciary is better suited to resolve factual and legal issues in contract disputes, the Legislature is not incapable of considering such issues, and is better suited to deciding the kinds of political issues that also attend claims against the State. For this Court to invade matters so laden with political policy concerns and, by abolishing immunity from suit, to disrupt the procedures the Legislature has fashioned, would be not only contrary to our precedents but also unsound jurisprudence.

## III

Finally, I must say a word in response to the dissenting opinion. The main premise of the dissent is that a state contract is not enforceable unless an individual party can sue the State in its courts. The premise is faulty for two reasons.

First, it simply assumes without explanation that the Legislature's decision to waive immunity from suit on a case-by-case basis rather than across the board is not an adequate remedy for contract claimants. Petitions for waivers of immunity under chapter 107 of the Civil Practice and Remedies Code are, in the dissent's view, no remedy at all. Why does legislative consent as a prerequisite to suit render the contract unenforceable? Certainly, the contracts of parties who received legislative consent to sue, sued, and collected were enforceable.

The presumption tacit in the dissent's position is that a party can obtain justice only in the courts, not in the Legislature. This view of the Second Department of Government is unwarranted. Though the courts are better suited to resolving factual and legal disputes in contract actions, the Legislature is better suited to resolving matters of political policy. As shown above, contract claims against the State can involve both. The United States Supreme Court observed in *Lynch v. United States,* 292 U.S. 571, 580, 54 S.Ct. 840, 844,

78 L.Ed. 1434: " 'The contracts between a Nation and an individual are only binding on the conscience of the sovereign and have no pretensions to compulsive force. They confer no right of action independent of the sovereign will.' " *Accord, Perry v. United States,* 294 U.S. 330, 346–347, 55 S.Ct. 432, 433, 79 L.Ed. 912 (1935). The same is true of the State as respects her own courts. Whether to remedy the State's contractual breaches is a matter addressed to the Legislature's conscience. The Judicial Department does not possess a monopoly on conscience. The State may not take property without compensation, but it may determine how its Branches will participate in deciding its contractual disputes.

Second, a waiver of immunity would not provide the full redress the dissent contends is essential for a contract with the State to be enforceable. Even if the State is held liable in a suit for breach of contract, it cannot be forced to pay the judgment. The Legislature may simply refuse to appropriate the funds. There is no reason why requiring legislative consent to sue makes a contract unenforceable but requiring legislative consent to collect does not. The dissent's terse response to this point is: "not relevant". *Post* at 418.

The dissenting opinion faults the Court for not explaining why a waiver of immunity from liability does not entail a waiver of immunity from suit. *Post* at 416. *Lynch* and *Perry* both distinguish between the government's obligation and its consent to suit. This Court in *MOPAC* stated that "[i]t is necessary to distinguish between two different governmental immunities: (1) immunity from suit without consent even though there is no dispute as to liability of the sovereign; and (2) immunity from liability even though consent to the suit has been granted." 453 S.W.2d at 813. If the State did not waive immunity from liability by executing a contract, then it would have no obligation at all to the contracting party for its breach. The State can waive immunity from liability, thus recognizing its obligation, but retain immunity from suit, thereby requiring that the party present its claim of obligation to the Legislature for its consent to sue. The dissenting opinion may feel that the State *ought* to

waive immunity from suit by executing a contract, but there is nothing in the mere execution of a contract that expressly waives immunity from suit or is inconsistent with its assertion.

The "modern justification" for governmental immunity is not, as the dissent states, "that suits *against the state would deplete resources of treasury and tax funds* necessary to operate the government." *Post* at 417. I have explained some of the considerations above, and they are not simply pecuniary. They involve the political structure of government and the allocation of responsibility among its Branches for resolving disputes involving the State.

The dissent states: "Today, Federal Sign has lost any recourse to enforce its contract with the State." *Post* at 418. This is simply untrue. Federal Sign lost its recourse to enforce its contract when it *refused* to petition the Legislature for consent to sue under chapter 107 of the Civil Practice and Remedies Code.

By waiving all immunity from suit for contract claims, the dissent would disregard the Legislature's clear intent not to do so, expressed as recently as a few days ago. Tex. S.B. 694, 75th Leg., R.S. (1997). Apart from the reasons for *immunity from suit* explained above, the Court should be very reluctant to disregard the consistent, recent, unmistakable intent of the Legislature on the issue of waiver of immunity.

Finally, the dissent states: "Today, the Court holds that the State cannot be sued for its breach of contract unless the Legislature gives permission for the plaintiff to bring suit against the State." *Post* at 418. The suggestion that the Court's holding is a new idea is incorrect. One hundred fifty years ago the Court stated that "no state can be sued in her own courts without her consent, and then only in the manner indicated by that consent." *Hosner v. DeYoung*, 1 Tex. 764, 769 (1847). What the Court does *today* is adhere to one and one-half centuries of consistent precedent.

ENOCH, Justice, joined by SPECTOR and ABBOTT, Justices, dissenting.

Today, the Court holds that the State cannot be sued for its breach of contract unless the Legislature independently gives permission for the plaintiff to bring suit against the State. This holding calls into question the enforceability of State contracts and goes counter to the national trend recognizing that the State waives sovereign immunity when it enters contracts.

## I. Immunity from Liability/Immunity from Suit

The Court notes two different types of sovereign immunity: immunity from liability and immunity from suit. 951 S.W.2d at 405. The Court then holds that by entering a contract with a private party, the State waives immunity from liability but not immunity from suit. *Id.* However, the Court fails to explain with any clarity why the State waives one but not the other. *Cf.* TEX. CIV. PRAC. & REM.CODE § 101.021 et al. (waiving both immunity from liability and immunity from suit for certain tort claims against the State). I agree that the State's act in entering a contract waives immunity from liability, but I would also hold that this same act waives immunity from enforcement of the contract by suit.

The Court primarily relies on three Texas cases to support its position that the State does not waive immunity from suit. 951 S.W.2d at 408 (citing *Herring v. Houston Nat'l Exch. Bank*, 114 Tex. 394, 269 S.W. 1031 (1925); *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838 (1958); *Missouri Pac. R.R. Co. v. Brownsville Navigation Dist.*, 453 S.W.2d 812 (Tex.1970)). However, only *Herring*, decided over seventy years ago, touches the issue before the Court today.

In *Herring*, the Houston National Exchange Bank sued the Texas Prison Commission for money owed under a contract. *Herring*, 269 S.W. at 1031. The Court concluded that such a suit against the State could not be maintained without the State's consent. *Id.* at 1032. The Court conceded that Houston National "should be accorded a hearing before a tribunal capable of passing upon the legal issues involved, to wit, a court of competent jurisdiction," but then concluded that

"the fixing of the governmental policy in this regard rests with the Legislature." *Id.* at 1032–33. Regardless, the Court left open the possibility that a government agency, performing extra-governmental functions and existing for extra-governmental purposes, could be sued for breach of contract. *Id.* at 1033. Notably, none of the parties argued, as is argued today, that the State's act in entering the contract waived its immunity from suit.

Thirty years after *Herring*, this Court decided *W.D. Haden Co. v. Dodgen*, 158 Tex. 74, 308 S.W.2d 838 (1958). In *Haden*, the W.D. Haden Co. sued the Game and Fisheries Commission for changing the terms of its state permit to remove mudshell from Galveston Bay. *Haden*, 308 S.W.2d at 839. The main issue in *Haden* was whether Haden was actually suing the State within the meaning of the sovereign immunity doctrine. *Id.* The Court concluded that Haden's suit to determine its rights under the permit was a suit against the State. *Id.* at 840–41. Both parties and the Court assumed that Haden could not bring suit against the State without legislative permission. No one argued, and the Court did not address, whether the State's act of entering a contract waived its immunity from suit.

Finally, in *MOPAC*, this Court held that a statute enabling a state agency to "sue or be sued" expressly waived the State's immunity from suit. *Missouri Pac. R.R.*, 453 S.W.2d 812, 813 (Tex.1970). *MOPAC* did not involve the issue presented in this case of whether by its act in entering the contract, the State waived its immunity from suit. Thus, the Court relies on three Texas cases, none of which was asked to address the principal issue presented today.

## II. Sovereign Immunity

The Court defers to the Legislature and refuses to allow Federal Sign to sue the State for its breach of contract claim. However, I contend that the better approach would be to hold that the State, by entering a contract with a private party, waives its sovereign immunity, including its immunity from suit.

The doctrine of sovereign immunity is a common law creation. *See Hosner v. DeYoung*, 1 Tex. 764, 769 (1847) (adopting the doctrine of sovereign immunity without citation). Despite its common law roots, issues of sovereign immunity are generally addressed by the Legislature. *University of Texas Medical Branch v. York*, 871 S.W.2d 175, 177 (Tex.1994) (citing *Lowe v. Texas Tech Univ.*, 540 S.W.2d 297, 298 (Tex.1976)). To waive sovereign immunity, the Legislature must use clear and unambiguous language. *York*, 871 S.W.2d at 177 (citing *Duhart v. State*, 610 S.W.2d 740, 742 (Tex. 1980)).

The concept of sovereign immunity derives from the ancient belief that "the King can do no wrong." *See* Glen A. Majure et al., *The Governmental Immunity Doctrine in Texas—An Analysis and Some Proposed Changes*, 23 Sw. L.J. 341, 341 (1969); Louis L. Jaffe, *Suits Against Governments and Officers: Sovereign Immunity*, 77 HARV. L. REV. 1, 1 (1963). The modern justification for sovereign immunity is that suits against the state would deplete resources of treasury and tax funds necessary to operate the government. *See* Elizabeth K. Hocking, *Federal Facility Violations of the Resource Conservation and Recovery Act and the Questionable Role of Sovereign Immunity*, 5 ADMIN. L.J. 203, 211 (1991) ("Sovereign immunity protects the public fisc, and, therefore, the public welfare by limiting assaults on the public fisc."). Because the Legislature appropriates, in advance, sufficient funds to meet the State's contractual obligations, it would appear that the modern justification for sovereign immunity is without merit in this context.

I note that Justice Hecht discusses additional political and financial concerns underlying the sovereign immunity doctrine. *See* 951 S.W.2d at 414 (Hecht, J., concurring). However, many, if not all, of these political and financial concerns can be satisfied through the legislative appropriation process.

## III. Waiver

The Court concedes that the State, by entering a contract, waives its immunity from

liability. In fact, the Court holds only that the State is immune from suit. Nevertheless, the Court's holding renders the State's contract with TSU unenforceable.

In our modern society, commercial entities and individuals, as well as our local, state, and federal government, contract with other parties every day. TSU could not function without countless day-to-day contractual dealings with private parties. TSU expects these parties to honor their obligations, and it can and does seek redress when they fail to do so. Similarly, these parties expect TSU to honor its obligations and to have recourse when it fails to do so.

Specifically, the Legislature granted TSU authority to enter into contracts for permanent improvements such as the construction of a scoreboard. *See* TEX. EDUC.CODE § 51.907 (authorizing competitive bidding for contracts for the construction of permanent improvements at institutions of higher education). Unquestionably, the Legislature intended for TSU to enter into valid and enforceable contracts.

A valid contract exists when each party promises an obligation, and such promise is enforceable by law. 1 SAMUEL WILLISTON, A TREATISE ON THE LAW OF CONTRACTS § 1 (4th ed.1990). Today, Federal Sign has lost the right to enforce by suit its contract with the State. This result is undesirable and ignores fundamental tenets of contract law.

The Court argues that Chapter 107 of the Civil Practice and Remedies Code provides a remedy to private parties. 951 S.W.2d at 409; *see* TEX. CIV. PRAC. & REM.CODE §§ 107.001–.005 (allowing a private party to petition the Legislature for permission to sue the State); *but see* TEXAS HOUSE OF REPRESENTATIVES, INTERIM REPORT TO THE 75TH LEGISLATURE 9 (1996) (noting that only six percent of the requests to sue have been granted in the past eight years). Admittedly, requiring legislative consent to sue does provide the Legislature an opportunity to resolve matters of public policy. But, as I previously mentioned, these political concerns may also be resolved through the legislative appropriation process.

The issue here is whether a private party has recourse to enforce by suit its contract with the State and to determine the amount of the State's liability, if any. The concurrence acknowledges that "the courts are better suited to resolving factual and legal disputes in contract actions." 951 S.W.2d at 415 (Hecht, J., concurring). Furthermore, such disputes should be resolved free from the political considerations that the concurrence recognizes accompany the Legislature's decision to permit suit.

The concurrence argues that sovereign immunity should prohibit suit because even if we were to conclude that the State waives suit immunity by entering into a contract, plaintiffs could not be assured of obtaining their judgments without legislative appropriation. 951 S.W.2d at 414 (Hecht, J., concurring). I simply point out that whether the Legislature ultimately appropriates the funds necessary to satisfy a judgment is not relevant to the issue of whether the Legislature has waived sovereign immunity. *See Texas Dep't of Human Servs. v. Green*, 855 S.W.2d 136, 145 (Tex.App.—Austin 1993, writ denied) (concluding that the Whistleblower Act waived the State's immunity from suit and liability but noting that the plaintiff still had to seek a legislative appropriation to recover the damages awarded to him).

All things considered, the Court's conclusion that the State retains sovereign immunity from suit renders Federal Sign's contract unenforceable. *See* RESTATEMENT (SECOND) OF CONTRACTS § 8 cmt. c (1979) (recognizing that "where the only direct remedy is by legislative approval of a private bill or by unreviewable administrative action, the contract is within the present definition of unenforceable contracts"). In my view, the more reasoned approach would be for the Court to carry its waiver of liability immunity determination to its logical conclusion: the Legislature, by authorizing TSU to enter into contracts, intended the contracts to be enforceable and waived *both* the State's immunity from liability and immunity from suit for breach of contract claims. *See George & Lynch, Inc. v. State*, 197 A.2d 734, 736 (Del.1964); *Pan–Am Tobacco Corp. v. Department of Corrections*, 471 So.2d 4, 5

(Fla.1985); *V.S. DiCarlo Constr. Co. v. State,* 485 S.W.2d 52, 54 (Mo.1972) (all recognizing that invoking the State's sovereign immunity, including immunity from suit, renders a contract invalid and holding that the Legislature's authorizing the State to enter valid contracts has waived the State's immunity from liability and suit for breach of contract).

The Court's holding also runs counter to the nationwide trend recognizing that states, through contracting, waive immunity from suit for breach of contract claims. In fact, the majority of states does not permit sovereign immunity as a defense against private parties seeking redress from the State for breach of contract. I realize that not all of these states allow private parties to litigate their claims in general jurisdiction courts. For example, in 1855, the federal government established a Court of Claims for the sole purpose of hearing breach of contract claims against the United States. *See* 28 U.S.C. §§ 171, 1491. Several states have adopted a similar approach. *See* ARK.CODE §§ 19–10–201, 19–10–204 (creating a state claims commission to hold an abbreviated trial for breach of contract claims against the State); 705 ILL. COMP. STAT. 505/8 (conferring on the State Court of Claims exclusive jurisdiction to hear and determine all claims against the state founded upon any contract entered into with the state); N.Y. CT. CL. ACT § 9 (conferring on the Court of Claims jurisdiction to hear breach of contract claims brought against the state); OHIO REV.CODE § 2743.02(A)(1) (providing the Court of Claims jurisdiction to determine the liability of the state for breach of contract claims); 72 PA. CONS.STAT. § 4651–1 (creating Board of Claims to arbitrate breach of contract claims against the Commonwealth); TENN.CODE § 9–8–307(a)(1)(L) (providing the Tennessee Claims Commission jurisdiction to determine actions for breach of written contract between claimant and state); W. VA.CODE §§ 14–2–4, 14–2–13 (establishing a court of claims with jurisdiction to hear breach of contract claims brought against the state).

However, a significant number of states have opened their courts to hear breach of contract claims against the State. Many of these states have judicially recognized the State's waiver of sovereign immunity, including immunity from suit, when the State enters a contract. *See State Highway Dep't v. Milton Constr.* Co., 586 So.2d 872, 875 (Ala. 1991); *Souza & McCue Constr. Co. v. Superior Court,* 57 Cal.2d 508, 20 Cal.Rptr. 634, 370 P.2d 338, 339 (1962); *Ace Flying Serv., Inc. v. Colorado Dep't of Agric.,* 136 Colo. 19, 314 P.2d 278, 280 (1957); *George & Lynch, Inc. v. State,* 197 A.2d 734, 736 (Del.1964); *Pan–Am Tobacco Corp. v. Department of Corrections,* 471 So.2d 4, 5 (Fla.1985); *Regents of Univ. Sys. v. Blanton,* 49 Ga.App. 602, 176 S.E. 673, 675 (1934); *Grant Constr. Co. v. Burns,* 92 Idaho 408, 443 P.2d 1005, 1010 (1968); *Kersten Co. v. Department of Social Servs.,* 207 N.W.2d 117, 120 (Iowa 1973); *J.A. Sullivan Corp. v. Commonwealth,* 397 Mass. 789, 494 N.E.2d 374, 377 (1986); *Hersey Gravel Co. v. State,* 305 Mich. 333, 9 N.W.2d 567, 569 (1943); *State Highway Comm'n v. Wunderlich,* 194 Miss. 119, 11 So.2d 437, 438 (1943); *V.S. DiCarlo Constr. Co. v. State,* 485 S.W.2d 52, 55 (Mo. 1972); *Meens v. State Bd. of Educ.,* 127 Mont. 515, 267 P.2d 981, 984–85 (1954); *Smith v. State,* 289 N.C. 303, 222 S.E.2d 412, 423–24 (1976); *State Bd. of Pub. Affairs v. Principal Funding Corp.,* 542 P.2d 503, 505–06 (Okla.1975); *Kinsey Constr. Co. v. South Carolina Dep't of Mental Health,* 272 S.C. 168, 249 S.E.2d 900, 903 (1978); *Wiecking v. Allied Med. Supply Corp.,* 239 Va. 548, 391 S.E.2d 258, 261 (1990). Other states have judicially abolished sovereign immunity in the breach of contract context. *See Stone v. Arizona Highway Comm'n,* 93 Ariz. 384, 381 P.2d 107, 109 (1963); *Brown v. Wichita State Univ.,* 217 Kan. 279, 540 P.2d 66, 84–86 (1975); *Todd v. Board of Educ. Lands and Funds,* 154 Neb. 606, 48 N.W.2d 706, 710 (1951); *P. T. & L. Constr. Co. v. Commissioner, Dep't of Transp.,* 60 N.J. 308, 288 A.2d 574, 578 (1972). And for a large number of states, the issue of waiver is moot because their legislatures have statutorily waived or abolished sovereign immunity for breach of contract claims. *See* ALASKA STAT. § 09.50.250; ARK.CODE §§ 19–10–201–210; CONN. GEN. STAT. § 4–61(a); HAW. REV. STAT. § 661–1; 705 ILL. COMP. STAT. 505/8; IND. CODE § 34–4–16–1.1; KY. REV. STAT. § 45A.245; LA. CONST. art. 12, § 10(A); ME.

REV. STAT. tit. 5 § 1510–A; MD.CODE, STATE GOV'T § 12–201(a); MINN. STAT. § 3.751; NEV. REV. STAT. § 41.031; N.H. REV. STAT. § 491:8; N.M. STAT. § 37–1–23; N.Y. CT. CL. ACT § 8; N.D. CENT.CODE § 32–12–02; OHIO REV.CODE § 2743.02(A)(1); OR. REV. STAT. § 30.320; 72 PA. CONS.STAT. § 4651–1; R.I. GEN. LAWS § 37–13.1–1; TENN.CODE § 9–8–307(a)(1)(L); S.D. CODIFIED LAWS §§ 21–32–2, 21–32–10; UTAH CODE § 63–30–5; WASH. REV.CODE § 4.92.010; W. VA.CODE §§ 14–2–4, 14–2–13; WYO. STAT. § 1–39–104. In fact, only two states provide no relief for breach of contract claims against the state other than legislative approval of a private bill. *See* VT. STAT. tit. 12, § 5601 (statute waiving tort liability does not apply to any claim for "damages caused by the fiscal operations of any state officer or department"); WIS. STAT. § 16.007 (establishing a Claims Board to hear breach of contract claims against the state with the only remedy of proposing a private bill to the legislature).

Perhaps all these other States recognize the inherent problems of concluding that sovereign immunity precludes suits on contracts. Notably, the concurrence would carefully narrow the Court's holding to leave open the possibility of suit against the State by private parties who have tendered performance, performed services on State property, delivered materials to the State, or loaned the State money. *See* 951 S.W.2d at 412 (Hecht, J., concurring).

This Court had the opportunity to align this State with the vast majority of other states in permitting suits against the State for breach of contract claims. However, the Court declined the opportunity, leaving Texas in the distinct minority.

### IV. CONCLUSION

Today the Court holds that the State waives just immunity from liability when it enters a contract—a decision that can only be described as a catch–22. According to the Court, the State can *be* liable for its breach of contract, but it cannot be *held* liable.

I respectfully dissent.