NO. 07-10-0247-CV

 IN THE COURT OF APPEALS

 FOR THE SEVENTH DISTRICT OF TEXAS

 AT AMARILLO

 PANEL D

 JANUARY 20, 2011

 ______________________________

 MIKE LEACH,

 Appellant

 v.

 TEXAS TECH UNIVERSITY,
Appellee

 ___________________________

 FROM THE 99TH DISTRICT COURT OF LUBBOCK COUNTY;

 NO. 2009-550,359; HON. WILLIAM SOWDER, PRESIDING

 _______________________________

 Opinion

 _______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

 All political power is inherent in the people, and all free
 governments are founded on their authority, and instituted for
 their benefit. The faith of the people of Texas stands pledged
 to the preservation of a republican form of government, and,
 subject to this limitation only, they have at all times the
 inalienable right to alter, reform or abolish their government in
 such manner as they may think expedient. [1]

 The issues before us today implicate the above quoted section of
our state constitution. We have been asked to determine whether the
common law doctrine of sovereign immunity barred the suit of Mike
Leach against Texas Tech University (the University), its Chancellor
Kent Hance, its regents Jerry Turner and Larry Anders, its president
Guy Bailey, its athletic director Gerald Myers, and its
employee/attorney Charlotte Bingham. Applying the doctrine via a plea
to the court’s jurisdiction, the trial court dismissed all but one
cause of action averred by Leach. The one remaining encompassed the
allegation of breached contract. The trial court refused to dismiss
it because the University “by and through its conduct . . . waived
[its] immunity from suit ….” We affirm in part, reverse in part, and
render in part the trial court’s order.
 Standard of Review
 Who did what to whom and why is not something this court will
decide. Nor do we address the veracity of any of the many accusations
levied by the parties against each other and third parties. That is
not within our authority when addressing whether a trial court acted
properly in granting a plea to its jurisdiction. This is so because
such a plea focuses upon the trial court’s authority to eventually
adjudicate the dispute on its merits; it is not itself an adjudication
on the merits.
 Next, a plea to the trial court’s jurisdiction likens to a
motion for summary judgment. Tex. Dep’t of Parks & Wildlife v.
Miranda, 133 S.W.3d 217, 228 (Tex. 2004). So, the jurist considering
it is obligated to 1) interpret the pleadings in a light most
favorable to the party attempting to sustain the court’s jurisdiction,
i.e. Leach, 2) accept as true all evidence favorable to that party,
and 3) indulge in every reasonable inference arising from the evidence
and favorable to him. Id.; accord City of Elsa v. Gonzalez, 325
S.W.3d 622, __ (Tex. 2010).
 A Simplistic Review of History
 Given the nature of the issues at bar, it is helpful to delve
into the history underlying the doctrine of sovereign immunity. The
latter found its genesis in old England. Then, as most will admit,
the king (or queen as the case may be) was omnipotent. No inherent
authority belonged to those over whom he lorded. Kemper v. State, 138
S.W. 1025, 1043 (Tex. Crim App. 1911), overruled on other grounds by
Robertson v. State, 142 S.W. 533 (Tex. Crim. App. 1911). Rather, any
rights or privileges they enjoyed were no greater than those the
monarch deigned to bestow on them. Moreover, the judiciary that he
created not only recognized this relationship between the king and his
people but also deduced from it that since the former was sovereign
over all, the latter could not be sue him without his approval. Thus,
the tenet was of neither legislative nor executive origin. Instead,
judges simply declared it to be law.[2] Tex. A&M University-
Kingsville v. Lawson, 87 S.W.3d 518, 520 (Tex. 2002) (stating that
“the bar of sovereign immunity is a creature of the common law and not
of any legislative enactment”).
 With the discovery and population of the New World, our
forefathers were called upon to establish their own system of
government. Having rebelled against the tyranny of British rule, one
would think that they would instill a government of limited powers.
Indeed, the constitutional passage written above purports to
encapsulate that sentiment. Nonetheless, not all things British were
rejected for our own courts adopted much of the common law developed
overseas. And, included in that body of law was the doctrine of
sovereign immunity. See Harris County Hosp. Dist. v. Tomball Regional
Hosp., 283 S.W.3d 838, 844 (Tex. 2009) (recognizing sovereign immunity
as part of the common law). So, though we have no king and despite
the words of article 1, §2 of our Texas Constitution, the government
(e.g., State, county, and municipalities) and those working for it in
their official capacities came to enjoy that created to protect
monarchs so many years ago.[3]
 The Law of Sovereign Immunity
 We wish not to mislead. It is clear that sovereign immunity is
alive and well in Texas. As it now exists, it provides a double
shield to the entities it protects. They are insulated from both
liability and suit. Tex. A&M University-Kingsville v. Lawson, 87
S.W.3d at 520-21; Federal Sign v. Texas S. Univ., 951 S.W.2d 401, 405
(Tex. 1997). That is, one can neither sue for payment nor compel
payment from the State without legislative consent. Federal Sign v.
Texas S. Univ., 951 S.W.2d at 405. Given this double shield,
defeating one still meant the other stood. Take, for instance, the
subject of contracts. In Texas, when the State executes such an
obligation it loses its immunity from liability. Id. at 405-06. Yet,
it remains protected from being forced into litigation via suit. Id.
So, while it must perform and, like any other party to a contract, is
responsible for its failure to do so, it cannot be sued for damages
without its permission if it opts to forego performance. In other
situations, the converse is also true; the State may grant someone
permission to sue it but retain its insulation from being forced to
pay. Id.; Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex.
Political Subdivision Prop./Cas. Joint Self-Insurance Fund, 212 S.W.3d
320, 323-24 (Tex. 2006) (explaining the nature of the immunity). The
logic behind that circumstance is not ours to debate for that is the
law as declared by our Supreme Court.
 That sovereign immunity extends to state universities is
similarly clear. Ben Bolt- Palito Blanco Consol. Indep. Sch. Dist. v.
Tex. Political Subdivision Prop./Cas. Ins. Joint Self-Insurance Fund,
212 S.W.3d at 324. Of less clarity, however, is the manner by which a
university or the State, for that matter, waives immunity.
 Admittedly, our Supreme Court has declared that it has
“consistently deferred to the Legislature” to effectuate waiver. Id.
at 326, quoting Tex. Natural Res. Comm’n v. IT-Davy, 74 S.W.3d 849,
854 (Tex. 2002). That is, we have been told that only the legislature
can remove the insulation. Id. This purportedly is so because that
body “is better suited . . . to weigh conflicting public policies
associated with waiving immunity and subjecting the government to
increased liability, the burden of which the public must bear.” Id.
Moreover, the legislature accepted the onus of determining when to
lower the shield, as exemplified by statutes such as the Texas Tort
Claims Act, Tex. Civ. Prac. & Rem. Code Ann. §101.021 (Vernon 2005)
(stating when governmental entities may be sued for torts committed by
their employees). Legislative writings with that effect, though, tend
to be the exception, not the rule. And, that the legislature intends
to keep waiver as the exception is borne out by §311.034 of the Texas
Government Code. Via the provision, our representatives declared that
“a statute shall not be construed as a waiver… unless the waiver is
effected by clear and unambiguous language.” Tex. Gov’t Code Ann.
§311.034 (Vernon Supp. 2010). What this means, then, is that unless
the words of a statute controlling a particular dispute between the
government and its wards clearly and unambiguously specify that one or
both aspects of immunity are removed, the governmental entity
continues to enjoy its judicially created insulation against paying
damages. See City of El Paso v. Heinrich, 284 S.W.3d 366, 368-69
(Tex. 2009) (holding that sovereign immunity protects an entity from
suit for monetary, as opposed to equitable, relief).
 Reading §311.034 of the Government Code and our Supreme Court’s
utterances about deferring to the legislature would seem to belie our
prior observation that the manner of waiving immunity falls short of
clear. But, they do not; instances continue to arise supporting our
observation. For example, in Tex. A&M University-Kingsville v.
Lawson, the Supreme Court had before it a factual scenario involving
the university’s refusal to abide by a settlement agreement. The
latter encompassed the resolution of a whistleblower claim. And,
though the legislature waived its immunity from suits founded upon
such claims per §554.0035 of the Texas Government Code, Tex. A&M
University-Kingsville v. Lawson, 87 S.W.3d at 521 (so stating), it
said nothing about the waiver encompassing agreements settling those
suits. Id. Neither that omission nor the prior comments about
deferring to the legislature dissuaded a majority of the Texas Supreme
Court, though, from concluding that Lawson was not barred by sovereign
immunity from suing Texas A&M for breaching the settlement. Id. at
522-24.
 Another opinion of the Supreme Court also tending to muddy the
waters is Federal Sign v. Texas Southern University. There, a
majority of justices first said that the decision to abrogate immunity
lay with the “. . . Legislature's sole province . . . . ” Federal
Sign v. Texas S. Univ., 951 S.W.2d at 409. Then, that same majority
wrote:

 We hasten to observe that neither this case nor the ones on which
 it relies should be read too broadly. We do not attempt to
 decide this issue in any other circumstances other than the one
 before us today. There may be other circumstances where the
 State may waive its immunity by conduct other than simply
 executing a contract so that it is not always immune from suit
 when it contracts.

Id. at 408 n.1. Justice Hecht echoed that cautionary statement in a
concurring opinion. Joined by Chief Justice Phillips and Justices
Cornyn and Owen, he said that “[c]ategorical statements in the Court's
opinion must be read in this context.” Id. at 413. He then mentioned
various “hypotheticals” wherein “. . . the State may waive immunity
by conduct . . . so that it is not always immune from contract suits.”
 Id. Such observations hardly comport with the idea that only the
legislature can decide when, where, and how to waive sovereign
immunity.
 In reading Federal Sign, Texas A&M, and §311.034 of the
Government Code, we are left feeling somewhat like a dog chasing
quarry that only runs in circles. We strive to reach the designated
end only to find ourselves back at the beginning. Nevertheless, from
the foregoing precedent generalities can be garnered. If one invokes
a statute as basis for defeating immunity, that statute must clearly
and unambiguously abrogate the shield. Tex. Gov’t Code Ann. §311.034
(Vernon Supp. 2010). On the other hand, if the purported waiver is
founded upon non-statutory grounds, then we must search precedent to
determine whether the factual situation has already been addressed by
the Supreme Court. E.g., Federal Sign v. Texas S. Univ., supra
(wherein the court clearly held that executing a contract waives
immunity from liability). If that court has not, then we defer to the
legislature’s general authority to act on the matter, except when the
circumstances compel the judiciary to intervene, if ever. With that
said, we turn to the issues posed to us by the parties.
 Application of Sovereign Immunity – Leach Issues
 A. Waiver by Operating Procedure
 We first address Leach’s argument that the University’s immunity
was waived by statute. The statute in question is §109.001(c) of the
Texas Education Code. Through it, the legislature wrote:

 The governance, control, jurisdiction, organization, and
 management of the Texas Tech University System is hereby vested
 in the present board of regents of Texas Tech University, which
 will hereinafter be known and designated as the board of regents
 of the Texas Tech University System. The board by rule may
 delegate a power or duty of the board to an officer, employee, or
 other agent of the board.

Tex. Educ. Code Ann. §109.001(c) (Vernon 2002). Per that grant, the
University enacted specific “operating policy and procedures” allowing
an employee to “elect to remove such issues of grievance or complaint
from further consideration through . . .” the school’s administrative
process if the employee “files substantially the same issues . . .
with any external agency or court . . . .” Leach reads this as
consent from the University to sue it in state court. We disagree for
several reasons.
 First, and assuming arguendo that any state-supported university
has the power to waive its immunity, such a waiver is not explicit in
the “operating policy and procedures” at issue. Recognizing that an
employee may end an internal grievance proceeding if the same
complaint is encompassed within a later suit speaks to whether the
person must exhaust internal administrative remedies before suing. It
does not speak to the matter of waiving immunity. Indeed, nothing in
the procedure even mentions immunity, much less its waiver. And,
there are situations requiring the exhaustion of administrative
remedies before suit may be filed, such as when someone alleges claims
under the Texas Whistleblower Act. See Tex. Gov’t Code Ann. §554.006
(Vernon 2004) (requiring the aggrieved employee to exhaust his
existing administrative remedies before filing suit). See also Tex.
Civ. Prac. & Rem. Code Ann. §101.101(a) (Vernon 2005).
 Second, that the University’s legal counsel, chancellor, or
president may have thought Leach had the ability to prosecute his
claims in a court of law (as Leach posits) is of no moment.
Admittedly, someone’s personal opinion about the meaning of rules and
regulations may be informative or interesting. Yet, they are just
that, opinions that may be informative or interesting. They have no
binding effect on a court since the latter construes legal writings,
such as rules and statutes, de novo. City of San Antonio v. City of
Boerne, 111 S.W.3d 22, 25 (Tex. 2003) (holding that statutes and rules
are subject to de novo review).
 Finally, and to the extent Leach argues that the University’s
operating procedures are comparable to state statutes, we abide by the
legislature’s unambiguous directive regarding the waiver of immunity.
Again, per that directive, a statute “shall not be construed” as
waiving immunity unless the “waiver is effected by clear and
unambiguous language.” Tex. Gov’t Code Ann. §311.034 (Vernon Supp.
2010). Those words plainly mean that any waiver one attempts to
derive from a statute must be clear and unambiguous. And, the statute
underlying Leach’s claim of waiver is §109.001(c). According to him,
it purports to vest the University’s regents with the power to do most
anything they want, including the power to waive immunity. Yet,
nothing in it expressly addresses immunity or its waiver. Nor does
Leach cite us to authority suggesting that the legislature even had
the topic of immunity in mind when enacting the provision. So, if we
were to accept Leach’s contention, we would have to say that a
legislative statement omitting all explicit or implicit reference to
immunity actually encompasses that subject. Though some may find it
fun to engage in creative legal gymnastics to achieve a desired end,
we opt not to join them. Instead, our decision is to reject the
notion that by enacting §109.001(c) the legislature unambiguously
permitted the University to waive its immunity. See Foster v.
Teacher Ret. Sys., 273 S.W.3d 883, 886-87 (Tex. App.–Austin 2008, no
pet.) (rejecting the argument that because the legislature vested the
Texas Retirement System with the power to adopt necessary rules and
procedures, the System had the implied power to waive its immunity and
stating that administrative agencies created by the legislature cannot
waive immunity on behalf of the legislature).
 B. Whistleblower Claim
 Next, Leach argues that the trial court erred in dismissing his
whistleblower claim. We again disagree and overrule the issue.
 It is true that suits upon claims arising under what we know as
the Texas Whistleblower’s Act, Tex. Gov’t Code Ann. §554.001 et seq.
(Vernon 2004) are not barred by sovereign immunity. Id. §554.0035.
Nonetheless, to enjoy that freedom to sue, the complainant must plead
facts establishing jurisdiction. In other words, he must allege facts
in his original petition satisfying the elements of the cause of
action for which immunity has been waived. See State v. Lueck, 290
S.W.3d 276, 883-85 (Tex. 2009) (holding that the elements of
§554.002(a) can be considered to determine both jurisdiction and
liability). That did not happen here. Nor do we think his petition
is capable of being amended to meet the requirement given the facts
involved.
 The Whistleblower Act forbids a “state or local governmental
entity . . . [from] suspend[ing] or terminat[ing] the employment of,
or tak[ing] other adverse personnel action against, a public employee
who in good faith reports a violation of law by the employing
governmental entity or another public employee to an appropriate law
enforcement authority.” Tex. Gov’t Code Ann. §554.002(a) (Vernon
2004). Furthermore, a “report is made to an appropriate law
enforcement authority if the authority” receiving the report “is a
part of a state or local governmental entity . . . that the employee
in good faith believes is authorized to . . . regulate under or
enforce the law alleged to be violated . . . or . . . investigate or
prosecute a violation of criminal law.” Id. §554.002(b). Here, the
alleged report consisted of Leach filing suit against the University,
among others, in the district court.
 The legislature did not explain what it meant by “report” when
drafting §554.002. Yet, we hold that it did not include the specific
situation here, given applicable rules of statutory construction. Per
those rules, our primary objective is to ascertain and give effect to
the legislature's intent. Tex. DOT v. City of Sunset Valley, 146
S.W.3d 637, 642 (Tex. 2004). This obligates us to consider 1) the
plain and common meaning of the words utilized in the writing, 2) the
context in which those words were used, 3) the objective sought by the
legislature, and 4) the consequences of a particular construction.
Id.; accord Tex. Gov’t Code Ann. §311.011(a) (Vernon 2005) (stating
that when words appearing in a statute are not defined by legislature,
those interpreting them must read them in context and construe them
according to the rules of grammar and common usage).
 According to the dictionary, a “report” consists of relating,
disclosing, or accounting for particular facts, events, circumstances
or things. See Merriam-Webster’s Collegiate Dictionary 1056 (11th ed.
2003). A report card, for instance, gives an account of a student’s
grades while a police report relates the supposed facts of an event.
So, if one was to only consider this commonly understood meaning of
report, it would be rather easy to conclude that an original petition
commencing a lawsuit falls within the realm of a report. Indeed, most
petitions, if appropriately drafted, disclose circumstances or
misconduct that the complainant views as entitling him to relief.
However, the consideration of criteria in addition to the plain
meaning of the word is necessary if we are to abide by the mandate of
the Supreme Court.
 One of those additional criteria is the context within which the
word appears. The relevant context here includes reference to an
“appropriate law enforcement authority.” Again, such an entity is one
charged with the ability to enforce or regulate the laws purportedly
breached or investigate the breach of those laws. Tex. DOT v.
Needham, 82 S.W.3d 314, 319-20 (Tex. 2002). The description calls
forth visions of police, administrative agencies, district attorneys,
the attorney general, and like bodies commonly associated with
investigating and enforcing the law. It takes a much greater stretch
of the imagination to include a district court within the category.
Indeed, precedent recognizes that the role of the judiciary excludes
investigative or executive functions of the type contemplated by the
statute. Robertson County v. Wymola, 17 S.W.3d 334, 341 (Tex.
App.–Austin 2000, pet. denied) (involving a whistleblower complaint).
And, the void is not filled simply because a district court has some
“general” authority to intercede in legal matters, especially when
that authority is adjudicative as opposed to investigative or
regulatory. See Tex. DOT v. Needham, 82 S.W.3d at 319-20 (stating
that it is not enough for the entity to have general authority to
investigate or regulate a matter).
 We further note that portion of the act requiring the
whistleblower to exhaust administrative remedies before seeking
judicial relief. That is, the statute clearly obligates the aggrieved
employee to “initiate action under the grievance or appeal procedures
of the employing state or local governmental entity relating to
suspension or termination of employment or adverse personnel action
before suing.” Tex. Gov’t Code Ann. §554.006(a) (Vernon 2004). It
makes little sense to have this requirement if filing an original
petition in a court of law constitutes an acceptable report under the
act. See Wilson v. Arlington Indep. Sch. Dist., No. 4:00-CV-0069-A,
2001 U.S. Dist. Lexis 10715, at *12 (N.D. Tex. July 26, 2001) (stating
that unless administrative remedies are exhausted per the statute, a
trial court lacks subject matter jurisdiction over the whistleblower
complaint). Indeed, to hold otherwise would be tantamount to negating
the obligation to first pursue administrative avenues of relief, and
we must endeavor to read a statute in a way that negates no portion of
it. Mid-Century Ins. Co. v. Ademaj, 243 S.W.3d 618, 621 (Tex. 2007).
 Simply put, the factual allegations contained in Leach’s
petition, the context in which the word “report” appears, and the
traditional purpose of the judiciary lead us to conclude, as a matter
of law, that filing a lawsuit against the University and others failed
to satisfy the mandate of §554.002(a). This is not to say that
circumstances unlike those at bar may lead to a different result.[4]
But, filing suit to redress claims of breached contract and
constitutional deprivation arising from the termination of the
complainant’s job is not such a circumstance.
 As for the argument that all Leach needed was to believe, in
good faith, that his lawsuit constituted the requisite report, we say
the following. It is true that the employee need only have a good
faith belief that he is complying with the elements of §554.002(a).
Tex. DOT v. Needham, 82 S.W.3d at 320; Potter County v. Parton, No. 07-
03-0338-CV, 2005 Tex. App. Lexis 4381, at *8-9 (Tex. App.–Amarillo
June 8, 2005, no pet.). Yet, good faith involves more than what the
employee may have believed subjectively. Potter County v. Parton,
2005 Tex. App. Lexis 4381, at *8-9. Rather, the phrase has two
components, one subjective (i.e. what the employee actually believed)
and the other objective (i.e. whether a reasonably prudent person in
the same circumstances could have thought that). Id. And, whether
the latter component exists depends on circumstances such as the
information available to the employee, his education and experience,
the nature of the dispute, and the nature of the entity involved, for
example. See id. at *10 (describing the objective component as being
a “reasonable [belief] in light of [the reporting employee’s] training
and experience”).
 Here, the complainant was a successful NCAA division one
football coach with a college degree and who received post-graduate
legal training. One can reasonably assume that it takes a bit of
savvy and intelligence to successfully field a team at that level of
play and navigate through the morass of NCAA rules and regulations.
Moreover, a person having such an educational background and
professional skills is somewhat different than the ordinary layman
unskilled in interpreting technical or legal jargon. To this, we add
the circumstance that Leach was not left alone to sojourn through a
legal maze once the University initiated steps to discipline him. He
had several attorneys to help him uncover, analyze, and apply the laws
of Texas. Together, they not only dealt with the University’s
allegations but also filed the lawsuit before us. Moreover, the
judicial precedent and statutory writings upon which we rely were
available to them, as well. Given this, we arrive at but one
conclusion. A reasonable person in the same circumstances and having
the same experience, education, and legal help as Leach would not have
ignored statutorily mandated exhaustion requirements and pertinent
judicial writings to deduce that filing a lawsuit satisfied the
elements of §554.002(a).[5] In short, no evidence exists enabling us
to conclude that Leach satisfied the objective prong of a good faith
belief.
 C. Constitutional Claims

 We next address the argument that the trial court erred in
dismissing Leach’s constitutional claims. The claims in question
involve the purported taking without compensation of Leach’s property
and his termination without due process.[6] We overrule the issues in
part.
 1. Takings Claim
 With regard to the takings claim, we find the Supreme Court’s
decision in General Servs. Comm’n v. Little-Tex Insulation Co., 39
S.W.3d 591 (Tex. 2001) dispositive. According to the Supreme Court in
Little-Tex, to establish a takings claim, the complainant must prove
1) that the State intentionally performed certain acts, 2) that the
acts resulted in a “taking” of property, and 3) that the property was
taken for public use. Id. at 598. These elements are not satisfied
when the State withholds property in a contractual dispute. This is
apparently so because the party demanding compensation after
performing his contractual duty to provide goods or services actually
provided those goods or services voluntarily as opposed to being
forced to do so via the State’s power of eminent domain. Id. at 598-
99, quoting State v. Steck Co., 236 S.W.2d 866 (Tex. Civ. App.–Austin
1951, writ ref’d). So, when the State withholds property under color
of a contractual right, such as when it believes the contract was not
properly performed, it is not acting as a sovereign invoking powers of
eminent domain, but rather as a private party to a contract invoking
rights expressed or implicit in the contract. Id. at 599. Thus, the
takings clause appearing under Texas Constitution art. I, §17 does not
apply to contractual disputes. [7]
 The compensation sought by and allegedly due Leach is that which
the University contracted to pay him in return for his performance of
services as the head football coach. The University purports to
withhold that compensation because Leach failed to abide by the terms
of their accord. Thus, what we have here is nothing other than a
contractual dispute described in Little-Tex and which falls outside
the takings clause.
 2. Denial of Due Course of Law
 As for the dispute regarding due process, Leach argues that he
was denied constitutionally protected interests without due course of
law. The property rights at issue were to 1) continue employment for
a term of years (except when terminated for cause) and 2) specific
compensation accruing while so employed. And because he tendered
sufficient evidence establishing the constitutional claim, it
allegedly was error for the trial court to use the doctrine of
sovereign immunity to dismiss it. We sustain the issue for several
reasons.
 Sovereign immunity bars a trial court from adjudicating lawsuits
through which a complainant seeks money damages from the State. Tex.
Natural Res. & Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 853
(Tex. 2002). It does not pretermit legal actions against a
governmental entity seeking equitable relief to redress violations of
the Texas Constitution. City of Elsa v. M.A.L., 226 S.W.3d 390, 392
(Tex. 2007); City of Beaumont v. Bouillion, 896 S.W.2d 143, 149 (Tex.
1995); City of Arlington v. Randall, 301 S.W.3d 896, 906-07 (Tex.
App.–Fort Worth 2009, pet. filed). One means of determining whether
constitutional violations have occurred that survive the invocation of
sovereign immunity is through prosecuting a declaratory action. Id.
at 908-09; Andrade v. NAACP of Austin, 287 S.W.3d 240, 251 (Tex.
App.–Austin 2009, pet. granted). Leach requested such declaratory
relief here when seeking a declaration of whether he was denied a
constitutionally protected interest by the University without due
course of the law. See Tex. Const. art. I, §19 (stating that “[n]o
citizen of this State shall be deprived of life, liberty, property,
privileges or immunities, or in any manner disfranchised, except by
the due course of the law of the land”). Admittedly, he cannot avoid
the shield of sovereign immunity by simply morphing a demand for
monetary relief into one for declaratory relief, City of El Paso v.
Heinrich, 284 S.W.3d at 370-71, and that is what the University
contended he did here. That is, it argued through its plea to the
court’s jurisdiction that his pleadings regarding the due course of
law violations were “a disguised attempt to obtain money damages under
the 2009 Contract recast as a declaratory judgment claim.” Yet,
whether Leach had a constitutionally protected interest (property or
liberty) that was denied him without due process is quite distinct
from whether the University breached the employment contract. It is
possible for there to be a due process violation without a breach of
contract or a breach of contract without a due process violation. So,
simply because both types of claims may be included in the same
petition does not ipso facto mean that the constitutional allegation
is a mere “disguised attempt to obtain money damages” for a breach of
contract. Examining the nature of the relief sought is determinative
for one may invoke the jurisdiction of Texas courts via a declaratory
action to redress, through equitable remedies, unconstitutional acts.
City of Elsa v. M.A.L., supra. So, the trial court had jurisdiction
to declare whether Leach was denied due course of law even though it
cannot adjudicate the attempt to recover damages for breach of
contract. The same may be true for other choses-in-action that he
may assert and which are independent of his breach of contract claim;
they must be assessed on an individual basis.
 D. Dismissal of Bailey, Myers, and Bingham
 Leach next contends that the trial court erred in dismissing the
claims asserted against President Bailey, Athletic Director Myers and
Vice-Chancellor Bingham in their official capacities simply because he
had sued the University as well. We dismiss this particular
contention for want of jurisdiction.
 The trial court’s decision was not founded upon sovereign
immunity but rather its construction of §101.106 of the Texas Civil
Practice and Remedies Code. The latter deals with a plaintiff’s
decision to sue both a governmental unit and its employees and bars
the plaintiff from suing both. Tex. Civ. Prac. & Rem. Code Ann.
§101.106(a) (Vernon 2005) (stating that the filing of a suit under the
tort claims act against a governmental unit constitutes an irrevocable
election by the plaintiff and bars any suit or recovery against the
individual employee regarding the same subject matter).
 Next, our jurisdiction is not plenary. We can only review suits
wherein a final judgment or order has been entered. Lehmann v. Har-
Con Corp., 39 S.W.3d 191, 195 (Tex. 2001). This is not true, though,
if the dispute encompasses an issue addressed in §51.014 of the Texas
Civil Practice and Remedies Code. In such situations, we may consider
the dispute though the trial court has yet to dispose of the entire
action. Tex. Civ. Prac. & Rem. Code Ann. §51.04 (Vernon 2005).
Dismissing governmental employees under §101.106 because the plaintiff
sued their employer falls within none of the categories itemized in
§51.014. It does not involve 1) receivers or trustees or their
appointment or removal, 2) a temporary injunction, 3) the denial of a
motion for summary judgment based on an assertion of immunity, 4) a
special appearance, 5) a plea to the trial court’s jurisdiction filed
“by a governmental unit,” or any other topic mentioned in the statute.
 So, because the order of dismissal from which appeal was taken does
not dispose of all claims asserted against all defendants (i.e. Craig
James, Larry Anders, and Jerry Turner) we have no jurisdiction to
resolve this aspect of the appeal. The particular dispute remains
before the trial court should it care to consider its decision in
light of the Supreme Court’s recent opinions in Tex. Lottery Comm’n v.
First State Bank of DeQueen, 323 S.W.3d 628 (Tex. 2010) and City of El
Paso v. Heinrich.
 The University’s Appellate Issues
 A. Breach of Contract
 Through its sole issue, the University argues that the trial
court erred in refusing to dismiss Leach’s breach of contract
allegation. Again, the trial court refused to do so because it
reasoned that the University “waived its immunity from suit . . . by
and through its conduct.” We sustain the issue.
 As previously mentioned, the Supreme Court left open, in Federal
Sign, the question of whether the state entity may waive its immunity
through its conduct. Yet, whether the idea of waiving immunity
through conduct extends to choses-in-action sounding in breach of
contract is not an open question. In General Servs. Comm’n. v. Little-
Tex Insulation Co., Little-Tex sued Texas A&M for breach of contract
and argued that the school waived its immunity by accepting the
benefits of the contract. The proposition was rejected by the Supreme
Court after acknowledging that it had left open “the question of
whether the State’s conduct may waive its immunity from suit.”
General Servs. Comm’n v. Little-Tex Insulation Co., 39 S.W.3d at 595.
The Court rather clearly stated that “there is but one route to the
courthouse for breach-of-contract claims against the State, and that
route is through the Legislature.” Id. at 597; accord Tex. Parks &
Wildlife Dep’t v E. E. Lowrey Realty, Ltd., 235 S.W.3d 692, 695 n.2
(Tex. 2007) (stating that “Lowrey could only pursue a breach of
contract claim against the State if he first obtained legislative
consent . . .”); Tex. Natural Res. Conservation Comm’n. v. IT-Davy, 74
S.W.3d at 856-57 (rejecting application of the waiver-by-conduct
doctrine in breach of contract suits and reaffirming that only the
legislature can waive immunity).
 Admittedly, the factual circumstances in Little-Tex differ from
those before us. And, because of that Leach argues that the holding
does not control the outcome here. Though the circumstances may
differ between the two suits, the Supreme Court in Little-Tex actually
focused not upon the facts underlying the cause of action but rather
upon the cause of action itself, that is, the claim of breached
contract. Nor did it simply say that a governmental entity retains
its immunity even though it accepted contractual benefits. Rather, it
told us that there was only one way the State could be sued for breach
of contract and that involved first garnering the legislature’s
approval via chapter 107 of the Texas Civil Practice and Remedies
Code. See Employees Retirement Sys. v. Putnam, LLC., 294 S.W.3d 309,
327 (Tex. App.–Austin 2009, no pet.) (also recognizing the Supreme
Court’s “rejection of the waiver-by-conduct doctrine since Federal
Sign” in suits for breached contract).
 We also recognize that our opinion contradicts that in Texas
Southern University v. State Street Bank & Trust Co., 212 S.W.2d 893
(Tex. App.–Houston [1st Dist.] 2007, pet. denied). In that breach of
contract case, the intermediate court of appeals held that the
University’s conduct resulted in the waiver of its immunity. That
decision, however, contradicts the Supreme Court’s statements in
Little-Tex, IT-Davy, and E. E. Lowrey Realty, Ltd. about the only
avenue for redress being through the Texas Legislature. If the
highest civil court in Texas truly means what it said, then the
holding in State Street simply is wrong. If, on the other hand, there
may still be instances akin to those in State Street warranting the
application of waiver by conduct, then the Supreme’s Court’s
utterances about the legislature having the exclusive authority to
waive sovereign immunity are inaccurate. In either case, it is a
matter for the Supreme Court (or Texas Legislature) to resolve, and we
have no choice but to abide by their decision.
 In sum, we reverse those portions of the trial court’s order 1)
dismissing, for want of jurisdiction, Leach’s due course of law claim
and request for non-monetary declaratory and equitable relief founded
upon it and 2) concluding that Texas Tech University waived its
sovereign immunity from the breach of contract claim due to its
conduct. We next dismiss, for want of jurisdiction, the appellate
issue involving whether Bailey, Myers, and Bingham were properly
dismissed by the trial court, render judgment dismissing Leach’s claim
of breached contract against the University, and affirm the remainder
of the order granting the pleas to the trial court’s jurisdiction.

 Brian Quinn
 Chief Justice

 -----------------------
 [1]Tex. Const. art. I, §2.
 [2]Dare we infer that this was an early example of judicial
activism?
 [3]Some may think it ironic that sovereign immunity remains
viable given the wording of our Texas Constitution. Again, it
mandates that “[a]ll political power is inherent in the people, and
all free governments are founded on their authority, and instituted
for their benefit.” Tex. Const. art. I, §2 (emphasis added). Thus,
true sovereignty lies in the people of Texas, not the government they
created. Kemper v. State, 138 S.W. 1025, 1043 (Tex. Crim. App. 1911)
(stating that “[t]he rule in America is that the American people are
the sovereigns, and in them is lodged all power, and the agencies of
government possess no authority save that which is delegated to them
by the people in the written compact . . . which is styled the
‘Constitution’ . . . .”). That the true sovereign may be subjected to
suit without consent while their creation cannot seems to diminish the
meaning of art. I, §2 of the Constitution.
 [4]For instance, a district judge may well be the appropriate
authority with whom to file a report if the complaint involves the
misconduct of a county auditor. Since the latter post is filled by a
district judge, Tex. Loc. Gov’t Code Ann. §84.002(a) & (b) (Vernon
2008), and the district judge also may remove the auditor, id.
§84.009, then a district judge may be the one best able to address the
incident. But, that is not a question we must decide today.
 [5]That Leach cites us to City of Elsa v. Gonzalez, 292 S.W.3d
221 (Tex. App.–Corpus Christi 2009) rev’d, 2010 Tex. Lexis 693 (Tex.
October 1, 2010) as indicating that a constitutional county judge may
be an acceptable authority with whom to file a report is of no import.
 This is so for several reasons. First, the Supreme Court reversed
the cited opinion and instead held that Gonzalez failed to satisfy the
need to file, in good faith, a report with the pertinent authority.
City of Elsa v. Gonzalez, No. 09-0834, 2010 Tex. Lexis 693, at *15
(Tex. October 1, 2010). Second, the office and duties of a
constitutional county judge are quite different from those of a county
court at law or district court judge. Admittedly, each exercises
adjudicative powers, but a constitutional county court judge actually
acts as the administrative head of the county and runs, with the help
of commissioners, that level of government. So, the hat he wears is
also highly legislative and executive in nature. Moreover, in
performing his legislative and executive duties, a constitutional
county judge is much more likely to be lawfully obliged to investigate
and regulate matters of the county and coffers he oversees than would
be a district judge viz the conduct of a state chartered university.
Finally, and as noted by the Supreme Court in its City of Elsa
opinion, the appropriate authority contemplated in the Whistleblower
Act is one that can do more than simply act in a remedial manner. Id.
at *14, citing Duvall v. Tex. Dep’t of Human Services, 82 S.W.3d 474,
481-82 (Tex. App.–Austin 2002, no pet.). Since a constitutional
county court judge exercises legislative and executive powers, his
post affords him greater ability to act in ways other than remedial.
The same generally cannot be said of either a county court at law and
district court judge whose acts are remedial in nature, i.e. they
adjudicate disputes and remediate purported wrongs.
 [6]According to his live pleading, Leach restricts his due
process claim to the rights emanating from art. I, §19 of the Texas
Constitution. Nothing is said about the Due Process Clause contained
in either the Fifth or Fourteenth Amendments to the United States
Constitution.

 [7]That the State is not acting as a sovereign (but rather a
private party) when withholding money due under a contract but
nonetheless enjoys immunity from suit for withholding that money
because it is deemed the sovereign is somewhat of a contradiction. No
doubt there is a reasonable explanation for the apparent
inconsistency, and the Supreme Court is in the best position to
explain it.