ACCEPTED
01-13-01034-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
1/20/2015 6:54:13 PM
CHRISTOPHER PRIN
CLERK

## NO. 01-13-01034-CV

In the Court of Appeals
for the First Judicial District
Houston, Texas

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
1/20/2015 6:54:13 PM
CHRISTOPHER A. PRINE
Clerk

SHIRLEY LENOIR, INDIVIDUALLY AND AS PERSONAL REPRESENTATIVE OF THE ESTATE OF SHANA LENOIR AND CHRISTOPHER MCKNIGHT, INDIVIDUALLY AND AS NEXT FRIEND OF NAYLA MCKNIGHT

**Appellants,**

VS.

LEAH ANN GONSKI MARINO F/K/A LEAH ANNE GONSKI AND JAOU-CHEN HUANG, M.D.

**Appellants.**

On Appeal From the 164th Judicial District Court of Harris County, Texas
Trial Court Cause No. 2012-35806A
The Honorable Alexandra Smoots-Hogan, Judge Presiding

## APPELLANTS' MOTION FOR REHEARING

TO THE HONORABLE FIRST COURT OF APPEALS:

Appellants, Shirley Lenoir, Individually and as Personal Representative of the Estate of Shana Lenoir and Christopher McKnight, Individually and as next friend of Nayla McKnight, pursuant to TEX. R. APP. P. §52.9, file this motion for rehearing of that portion of the Court's opinion, issued on November 25, 2014,

affirming the trial court's dismissal of Appellee Jaou-Chen Huang under TEX. CIV. PRAC. & REM. CODE §101.106 (f).

## I.

The Lenoirs filed a lawsuit against Dr. Huang in his individual capacity because they alleged that his violations of state law proximately caused Shana Lenoir's death. In the Court's opinion regarding Dr. Huang, the Court stated, "Lenoir does not dispute that the Health Science Center is a governmental unit. What she challenges is whether Dr. Huang was acting within the scope of his employment with the Health Science Center when he oversaw Dr. Gonski's care of Lenoir." Op. at 22.

While it is true that the Lenoirs challenged whether Dr. Huang was in the scope of his employment for UTHSCH, the Lenoirs also challenged whether Dr. Huang was acting as UTHSCH's employee at the time of the incident in question. *See, Appellants' Brief* at 28-44. An alleged governmental employee has the burden to establish—as a matter of law—that he is an employee of a governmental unit and evidence that is disputed or insufficient cannot support a dismissal. Op. at 8.

However, the Court's opinion does not discuss Dr. Huang's status as an employee of a governmental unit, even though the issue is hotly contested by the Lenoirs. As defined by TEX. CIV. PRAC. & REM. CODE §101.001(2):

> "Employee" means a person, including an officer or agent, who is in the paid service of a governmental unit by competent authority, but

does not include an independent contractor, an agent or employee of an independent contractor, or a person who performs tasks the details of which the governmental unit does not have the legal right to control.

Dr. Huang offered two affidavits in support of his argument that he was acting as an employee of UTHSCH at the time of the incident. CR 333-334, 803-807. No exhibits are attached to these affidavits or referenced in the affidavits. The Lenoirs objected that statements in these affidavits were conclusory and were contradicted by other evidence, including Dr. Huang's contract with UT Physicians, but the Court overruled these objections. Op. 26-28.

In *City of Keller v. Wilson*, 168 S.W. 3d 802, 812 (Tex. 2005), the Court discussed the rule that incompetent evidence is legally insufficient to support a judgment, even if admitted without objection. The Court stated, "[Evidence showing it to be incompetent cannot be disregarded, even if the result is contrary to the verdict. If the rule were otherwise, incompetent evidence would *always* be legally sufficient, because the evidence showing it to be incompetent could never be considered." The Court then gave the following example of when evidence is legally insufficient:

> Similarly, an employee's testimony that he was in the course and scope of his employment is legally insufficient to support a verdict against his employer if the evidence shows that legal conclusion to be incompetent.
> *Id*.

Thus, Dr. Huang's statements that he was an employee of UTHSCH at the time of the incident are incompetent legal conclusions that cannot support his dismissal, if the statements are contradicted by other evidence.

UT Physicians (formerly Uni Care Plus) is a Texas certified non-profit health corporation which is regulated by TEX. OCC. CODE §162.001, *et seq*. CR 1046. Dr. Huang was working at a UT Physicians' clinic at the time of the incident performing medical services for professional fees. Dr. Huang signed a written contract with UT Physicians to work at the facility. CR 1046-1062. UT Physicians had the right to terminate Dr. Huang's practice at its facility. CR 1049-1050. Dr. Huang agreed to comply with UT Physicians' conditions of employment listed in the contract, including the requirement that he provide only "Medically Necessary" medical services and comply with UT Physicians' bylaws. CR 1046-1049. The contract expressly states, "**Participation in University Care Plus (now U.T Physicians) has no effect on or relationship to faculty status at UT-H or medical staff privileges at any hospital…**". CR 1049 at D.1 ("Effect of Participation in University Care Plus"). More importantly for the Lenoirs' claim against him, Dr. Huang agreed to comply with UT Physicians' billing policies and to submit claims for his professional services using UT Physicians' billing forms. CR 1048, at ¶¶8-9. There is no mention of Dr. Huang supervising residents in the UT Physicians' contract and the Lenoirs have disputed that UT Physicians is a part

of the UTHSCH residency training program. *See, Appellants' Brief* regarding Dr. Gonski.

Thus, UT Physicians had the legal right to control the details of Dr. Huang's work at its facility that the Lenoirs allege caused their decedent's death, not UTHSCH. Dr. Huang cannot claim he is entitled to governmental immunity because of his faculty status at UTHSCH when the contract he signed to work at the UT Physicians' clinic says that the work is unrelated to his faculty status at UTHSCH.

Finally, this Court rejected the Lenoirs' *ultra vires* argument stating that more recent case law indicates that an employee is within his scope of employment, even if acts wrongly or negligently. However, the Lenoirs also cited *City of El Paso v. Heinrich*, 284 S.W.3d 366 (Tex. 2009) in support of their ultra vires argument. In *Heinrich*, the Texas Supreme Court stated, "[A]n action to determine or protect a private party's rights against a state official who has acted without legal or statutory authority is not a suit against the State that sovereign immunity bars." *Id*. at 368, quoting *Fed. Sign v. Tex. S. Univ*., 951 S.W.2d 401, 405 (Tex.1997). The Court also recognized a cause of action for money damages against a government official in his individual capacity for wrongful or unconstitutional conduct. *Id*. at 373, n. 7. Since the Court does not discuss

*Heinrich* in its opinion, it is unclear why this case is not applicable to authorize the Lenoirs' claim.

## PRAYER

For the reasons set forth above, Appellants respectfully request that this Court rehear its opinion regarding Dr. Huang and upon rehearing, reverse the trial court's ruling dismissing Dr. Huang and remand this case for further proceedings and grant Appellants all other relief to which they may be entitled.

Respectfully submitted,

**THE GOURRIER LAW FIRM, PLLC**

By: /s/ Joseph M. Gourrier
JOSEPH M. GOURRIER
Texas State Bar No. 24007258
530 Lovett Boulevard, Suite B
Houston, Texas 77006
joseph@gourrierlaw.com
Telephone: 713-533-9077
Facsimile: 713-533-9376
**ATTORNEY FOR APPELLANTS**

## CERTIFICATE OF COMPLIANCE

As required by Texas Rule of Appellate Procedure 9.4(i)(3), Appellants certify that this brief is 1,061 words which is in compliance with Texas Rule of Appellate Procedure 9.4(i)(2).

By:    /s/ Joseph M. Gourrier
         JOSEPH M. GOURRIER
          Texas State Bar No. 24007258

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to all known counsel of record in this cause in accordance with the Texas Rules of Civil Procedure via U.S. Mail, certified, return receipt requested, e-service, and/or facsimile and/or hand delivery, on this 20th day of January 2015.

| | |
|---|---|
| Charles B. Holm<br>Kyle M. Smith<br>Holm Bambace, LLP<br>1010 Lamar, Suite 1100<br>Houston, Texas 77002<br>Telephone: (713) 652-9700<br>Facsimile: (713) 652-9702<br>***Attorneys for Defendants Leah Ann Gonski Marino f/k/a Leah Anne Gonski and Jaou-Chen Huang, M.D.*** | John R. Strawn, Jr.<br>Victoria P. Skinner<br>Pennzoil Place, South Tower<br>711 Louisiana, Suite 1850<br>Houston, Texas 77002<br>Telephone: (713) 659-9600<br>Facsimile: (713) 659-9601<br>***Attorneys for Defendant Leah Ann Gonski Marino f/k/a Leah Anne Gonski*** |

/s/ Joseph M. Gourrier
Joseph M. Gourrier

<u>Appendix</u>

Acknowledgment of Physician Participation in University Care Plus (Dr. Huang's Contract with U. T Physicians) ..................................................................................Tab 1

# TAB 1

## ACKNOWLEDGEMENT OF PHYSICIAN PARTICIPATION
## IN UNIVERSITY CARE PLUS

I, _Acu-Chen Huang_ ("Physician") acknowledge and understand the conditions for participation in University Care Plus ("University Care Plus"), a Texas certified non-profit medical corporation, which has entered into an agreement with The University of Texas Health Science Center of Houston ("UT-H") pursuant to which I and other faculty physicians will participate in the professional activities of University Care Plus. By my signature below, I acknowledge that I am bound by the participation requirements herein.

A. **Purposes of University Care Plus.** University Care Plus is a non-profit organization of physicians which has as its purposes:

1. To function as a physician organization to arrange for the provision of medical services by its participating physicians;

2. To support the provision of quality, cost-effective medical services and the development of new services and products for the community;

3. To more effectively market the medical services provided by its participating physicians to third party payors and the community;

4. To accomplish all objectives through the joint, cooperative action of its participating physicians; and

5. To transact any and all other business which a Texas non-profit medical corporation may do.

B. **Obligations of University Care Plus.** University Care Plus agrees to use its best efforts to negotiate and enter into agreements with potential third-party payors ("Group Contracts"), including employers, insurance companies, health benefit and managed care plans, in order to enable University Care Plus to arrange for the delivery of health care services to patients covered under Group Contracts ("Members") by its participating physicians, including Physician. University Care Plus shall also satisfy such other criteria as the Board of Directors may from time to time determine.

C. **Conditions of Participation.** Physician understands and agrees to comply with the following conditions of participation, which apply to all participating physicians of University Care Plus:

1. To participate in and provide Physician's usual range of medical services under any and all Group Contracts with which University Care Plus contracts that require the Physician's participation (recognizing and agreeing to the fact that not all contracts may request or require that Physician be included in the panel of contracting providers) and that

HLTHDAL:68.1/276892


EXHIBIT
A-7

1046

conform to the Fee Schedule agreed to by UT-H ("Attachment A") and/or that are otherwise executed by University Care Plus in accordance with Section F of this Agreement;

2. To accept Members as long as Physician's practice is open to new patients in general, unless UT-H provides University Care Plus with thirty (30) days written notice that Physician is closing his or her practice to all new patients. In the event of such notice by UT-H, Physician may not accept any new Members. Physician may reopen his or her practice to new Members upon thirty (30) days written notice by UT-H to University Care Plus, after which Physician shall again accept Members under all Group Contracts then in effect.

3. To provide or arrange for the provision of Medically Necessary services required by Members which Physician customarily provides to his or her other patients and in accordance with the standards and procedures applicable to Physician's other patients. For purposes of this Agreement, "Medically Necessary" means those health care services that, in accordance with applicable utilization management policies of University Care Plus and/or a payor, are determined to be:

   (a) appropriate for the symptoms and diagnosis or treatment of the Member's condition, illness, disease or injury;

   (b) provided for the diagnosis, or the direct care and treatment of the Member's condition, illness, disease or injury;

   (c) in accordance with current standards of good medical practice;

   (d) not primarily for the convenience of the Member or Physician; and

   (e) the most appropriate supply or level of service that can safely be provided to the Member.

   When applied to hospitalization, this further means that the Member requires acute care as an inpatient due to the nature of the services rendered or the Member's condition, and the Member cannot receive safe or adequate care as an outpatient;

4. If required by a particular Group Contract, to admit or refer only to providers affiliated with University Care Plus, except in the event of an emergency or when services or facilities are not available from such providers;

HLTHDAL:64.1/27689/2

1047

5.  To provide or make medical coverage available and accessible twenty-four hours a day, seven days a week for Members requiring urgent or emergency services;

6.  To maintain a level of clinical activity as appropriate to Physician's practice specialty and at such hospital(s) or clinics designated by University Care Plus' Board sufficient to allow University Care Plus to objectively measure the cost, utilization and quality of services provided to Members;

7.  To comply with the Bylaws of University Care Plus and all other policies and procedures of University Care Plus that have been or will be enacted by University Care Plus' Board (and any amendments thereto), including but not limited to Participation Criteria ("Attachment B"), Antitrust Policy ("Attachment C"), and this Agreement;

8.  To comply with the requirements of the utilization management, credentialing, claims payment administration, billing, verification, coordination of benefits, and quality improvement programs (and any amendments thereto) of University Care Plus and Group Contracts upon provision of copies of such documents to Physician;

9.  To submit an itemized claim for Physician's services using the HCFA-1500 billing form, or a form containing equivalent information, within the time frame required by the Board pursuant to various contracts for completion of the Member's course of treatment;

10. To allow University Care Plus to publish Physician's name, specialty, address and telephone number in University Care Plus' and Group Contracts' marketing materials;

11. To work cooperatively with other physicians, health professionals, the staff of University Care Plus in order to perform the functions, duties and obligations required by Group Contracts, University Care Plus Bylaws, and this Agreement;

12. To address all grievances relating to University Care Plus' internal operations through the Grievance Policy adopted by University Care Plus ("Attachment D");

13. To comply with the participation renewal requirements and procedures utilized by University Care Plus;

14. To agree that Physician's voluntary cancellation of his/her participation in University Care Plus requires both ninety (90) days notice to the University Care Plus Board of Directors, written approval by UT-H and compliance

1048

with the termination provisions of all managed care agreements into which Physician has entered; and

15. To advise University Care Plus immediately upon any change in the information provided in Physician's application for University Care Plus, including but not limited to conflicts of interest the Physician has or may have.

D. **Effect of Participation in University Care Plus.** Physician has reviewed the Bylaws and policies of University Care Plus and understands and agrees that:

1. Participation in University Care Plus has no effect on or relationship to faculty status at UT-H or medical staff privileges at any hospital, except that loss of faculty status at UT-H or medical staff privileges results in termination of University Care Plus participation in accordance with Section E of this Agreement;

2. Participation is not transferable, and no individual may sell, assign, transfer or convey his or her Physician participation in University Care Plus to any other person at any other time;

3. In no event shall any Physician bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from, or have any recourse against any Member except as expressly permitted by and in accordance with applicable Group Contracts or payor policies, such as for Member deductibles and/or copayments.

4. Subsequent to Physician's execution of this Agreement, Physician shall not independently contract with any party with whom University Care Plus holds a Group Contract for those services and/or products covered by University Care Plus' Group Contract.

5. Nothing shall prohibit Physician from providing on an individual basis any medical services not subject to a Group Contract to any patient, or from providing medical services of any type to any patient who is not covered under any Group Contract.

E. **Termination of Participation.** Physician understands that the following actions shall cause the Board to terminate Physician's participation in University Care Plus:

1. Upon Physician's departure or resignation from the faculty of UT-H or retirement from the active practice of medicine, UT-H shall so notify University Care Plus, and Physician's participation in University Care Plus shall be automatically terminated upon the date specified by University Care Plus' Board or its designee.

1049

2. Physician's participation in University Care Plus shall be terminated immediately in the event that Physician ceases to be duly licensed to practice medicine in the State of Texas.

3. Physician's participation shall be automatically terminated if Physician ceases for whatever reason to maintain appropriate privileges at the hospital(s) designated by University Care Plus' Board.

4. The Board of Directors may terminate Physician's participation in University Care Plus for Physician's failure to comply with the requirements of any Group Contracts, this Agreement, the Bylaws of University Care Plus or any policy adopted by the Board.

5. Physician and UT-H shall be notified by University Care Plus' Board or its designee in writing of his or her failure to comply with any University Care Plus or Group Contract programs, criteria, or policies and procedures. University Care Plus' Board or its designee shall determine in its sole discretion and shall state in the notice to Physician the number of days in which to remedy such non-compliance. If Physician does not resolve such issues, Physician's participation shall be terminated effective on the date set forth in the notice.

6. The dissolution or bankruptcy of University Care Plus.

7. Upon termination of this Agreement for any reason, Physician shall continue to provide Medically Necessary services to all Members currently under active treatment by Physician on the date of termination until (a) such Member's care is transferred to another participating physician, (b) treatment is completed, or (c) for a period of three months, whichever occurs first.

F. **Limited Appointment of University Care Plus as Agent.**

1. Pursuant to the provisions of the agreement between University Care Plus and UT-H regarding faculty physicians, participation in University Care Plus and subject to the limitations set forth below, Physician hereby constitutes and appoints University Care Plus as Physician's true and lawful attorney-in-fact for the limited purposes of negotiating and executing Group Contracts on behalf of Physician, as well as modifications, extensions and renewals of such Group Contracts, all of which shall be binding upon Physician. Physician further designates University Care Plus as Physician's true and lawful agent for the further limited purpose of giving and receiving notices required or permitted to be given and received under such Group Contracts, including notices of termination. Any notice received by University Care Plus on behalf of Physician shall promptly be transmitted to Physician.

1050

2.    University Care Plus' authority to act as Physician's attorney-in-fact and agent, as authorized by this Section, is limited by the following conditions and requirements:

(a)    University Care Plus shall not execute, nor shall Physician be bound by, any Group Contract that conforms to the Fee Schedule in Attachment A, unless at least thirty (30) days after execution of such Group Contract, University Care Plus notifies UT-H and Physician in writing of the content of such Group Contract.

(b)    University Care Plus shall not execute, nor shall Physician be bound by, any Group Contract that obligates Physician to provide services at a compensation rate less than that contained in the Fee Schedule in Attachment A, unless at least thirty (30) days prior to such lesser compensation rate becoming effective, University Care Plus notifies UT-H and Physician in writing of such lesser compensation rate, and during such thirty (30) day period, neither Physician nor UT-H notifies University Care Plus in writing of an objection to such lesser compensation rate.

(c)    University Care Plus shall not execute, nor shall Physician be bound by, any modification, extension or renewal of any existing Group Contract in which Physician is a participant that in any material respect changes the rights and obligations of Physician, unless at least thirty (30) days prior to the same becoming effective, University Care Plus notifies UT-H and Physician, in writing of such modification, extension or renewal, and during such thirty (30) day period, neither Physician nor UT-H notifies University Care Plus in writing of an objection to such modification, extension or renewal.

3.    Whenever Physician is required by this Article to notify University Care Plus in writing of any objection to the content of a Group Contract, a modification, extension or renewal thereof, or any decrease in compensation, and Physician fails to do so within the specified 30-day period, Physician shall be conclusively presumed to have approved, and University Care Plus shall be conclusively authorized to bind Physician to, the same.

4.    This power of attorney and special agent appointment is granted for the term of this Agreement, and for any renewal term hereof, and shall be revoked effective upon the termination of this Agreement.

G.    Confidentiality. Physician hereby further acknowledges and agrees that Physician will maintain in confidence the terms of this Agreement and any payor agreements, including but

1051

not limited to fee schedules thereof, as well as all business information that may come into Physician's possession by virtue of Physician's status as a participating physician in University Care Plus or an investor, partner, contractor, or supplier of any venture developed or managed by University Care Plus and will not disclose any such information to any person other than other participating physicians of University Care Plus or the applicable venture absent a release or a consent to release of such information by University Care Plus or the applicable venture.

H.    Trade Names. Neither party shall utilize any trade name, service mark, or any material or property protected by patent, trademark, or copyright of the other party except as expressly permitted by this Agreement or otherwise in writing.

I.    Notice. Any notice required under this Agreement shall be in writing and sent by certified or registered mail, return receipt requested, postage prepaid, by express mail, or by delivery in person to the parties at the following addresses:

If to University Care Plus:                                      If to Physician:

University Care Plus                            _____
P.O. Box 20627                                _____
Houston, Texas 77225-0627                     _____
Attn: President                               _____

J.    Entire Agreement. This Agreement embodies the entire Agreement between University Care Plus and Physician and there are no agreements, representations, or warranties, oral or written, between University Care Plus and Physician other than those set forth in this Agreement.

K.    Rights Under This Agreement. This Agreement shall bind and inure to the benefit of the parties hereto. Nothing contained in this Agreement is intended to confer upon any person other than Physician and University Care Plus, any rights, remedies, obligations or liabilities under or by reason of this Agreement.

L.    Access to Books and Records. If this Agreement is determined to be subject to the provisions of Section 952 of P.L. 96-499, or its equivalent, which governs access to books and records of subcontractors of services to Medicare providers where the cost or value of such services under the contract exceeds $10,000 over a 12-month period, University Care Plus agrees to permit representatives of the Secretary of the Department of Health and Human Services and the Comptroller General, in accordance with criteria and procedures contained in applicable federal regulations, to have access to its books, documents and records as necessary to verify the cost of services provided under this Agreement.

I have read and understand this Physician Participation Acknowledgement and the Bylaws of University Care Plus as well as the Attachments listed below, and hereby acknowledge that I am bound by the conditions of participation in University Care Plus.

HLTHDAL:68.1/27689/2                              7

1052

# FEE SCHEDULE

HLTHDAL:68.1/776892

## Attachment B
## PHYSICIAN PARTICIPATION CRITERIA

HLTHDAL:68.1/27689/2

---
### UNIVERSITY CARE PLUS
### PARTICIPATION CRITERIA
---

University Care Plus' Board of Directors ("Board") has the sole discretion with respect to the acceptability of each applicant's credentials for purposes of initial and continued participation in University Care Plus. To be accepted for participation and to maintain participation in University Care Plus, every applicant must demonstrate that he or she fulfills all of the following criteria (unless specifically waived by the Board) and advise University Care Plus of any changes in any of the requested information within thirty (30) days of occurrence:

I.   PROFESSIONAL CRITERIA

1.   Graduation from a school of medicine, osteopathy or dentistry, which is:

   - Accredited by the Liaison Committee on Medical Education and listed in the AAMC Directory of American Medical Education or American Osteopathic Education;

   - Listed in the World Directory of Medical, Osteopathy or Dental Schools; or

   - Appropriately recognized or accredited according to allied health professional practices.

2.   Valid, current professional licensure for the State of Texas.

3.   Valid, current Drug Enforcement Administration (DEA) registration and State Narcotics License; OR, evidence that the applicant does not require DEA registration in order to deliver appropriate care.

4.   Current professional liability insurance coverage in the amount of $500,000 per occurrence and $1,500,000 aggregate for one (1) year or in such other amounts required by University Care Plus with a carrier that is acceptable to University Care Plus. Individual exceptions to this may be granted by the University Care Plus Board.

5.   Appropriate medical staff membership at those hospitals or facilities specified by the Board.

6.   Maintenance of a level of clinical activity at a hospital specified by the Board sufficient to allow University Care Plus to objectively measure the cost, utilization and quality of services provided to enrolled patients.

7.   Board certification (or eligibility) in a specialty recognized by the American Board of Medical Specialties or its international equivalent or the American Osteopathic

DGG01834 27619-2

Association. Exceptions to this may be granted by the Board upon evaluation of training and experience. Applicants who have recently completed training and are board eligible may be considered for probationary membership pending board certification. Any applicant who is certified by a board that requires recertification but fails to be recertified shall be automatically terminated as a Participating Provider. Physicians will accept patients only to that portion of their practice in which they are board certified.

8. Willingness to accept patients under each contract negotiated by University Care Plus.

9. Willingness to pay, in a timely manner, such dues and assessments as may be imposed from time to time by University Care Plus.

10. Willingness to work cooperatively with other physicians, health professionals, the staff of University Care Plus in order to perform the functions, duties, and obligations required by payor contracts, University Care Plus Bylaws, and the Physician Participation Agreement.

11. Attendance at a minimum of one educational program per year sponsored or endorsed by University Care Plus.

12. Proof of annual participation in appropriate specialty continuing medical education.

13. Information concerning involvement in OR satisfactory resolution of the following:

    a. Involvement in a professional liability suit, arbitration or settlement or any legal or regulatory action in connection with the applicant's professional practice.

    b. Denial or cancellation of professional liability insurance.

    c. Recognizing the requirements of the Americans with Disabilities Act, current physical or mental health problems which may interfere with the ability to practice medicine.

    d. Professional disciplinary action by any state or local medical society, specialty society, or state board of medical examiners.

    e. Sanctions of any kind by the DEA, any state drug agency, or any person or entity for improper prescribing procedures or actions.

    f. Involuntary reduction, limitation, suspension, or termination of hospital privileges, employment, or physician services contract, or imposition of proctorship or probation by any hospital at which applicant has had medical staff privileges.

    g. Quality sanctions by a Professional Review Organization (PRO).

HLTHDAL:6473.1/276492                                        2

1056

h.   Restrictions from receiving payments from Medicare, Medicaid, or any other third party reimbursement programs.

i.   Any felony criminal charges brought against the physician applicant.

14.   Provide his or her personal profile from the National Practitioner Data Bank, current within six (6) months or provide satisfactory explanation of medically-related lawsuits, claims and settlements.

15.   Maintain a practice consistent with the goals of University Care Plus and scrupulously observe the highest professional ethics.

16.   Accurate and truthful completion of an Application and the appropriate release directing any and all entities that may have information with respect to applicant's ability to practice medicine to provide such information to University Care Plus and its agents on request.

17.   Execution and agreement to abide by the terms of the University Care Plus Physician Participation Agreement.

II.   ECONOMIC AND BUSINESS NEEDS CRITERIA

1.   University Care Plus shall evaluate statistics on a sufficient number of applicant's patient contacts at University Care Plus participating hospitals to evaluate the cost effectiveness of applicant's utilization of health care resources. This requirement may be waived or amended for applicants whose practices rarely require hospitalization of patients. Evaluation may include, without limitation:

a.   Frequency of service;
b.   Intensity of service;
c.   Average cost of DRG;
d.   Average cost per office encounter;
e.   Usage of ancillary services;
f.   Applicant's charge patterns; and
g.   Willingness to participate in, accept the results of, and comply with the requirements of the utilization management and quality improvement programs of University Care Plus and its contracted payors.

A significant deviation by applicant in the factors evaluated may indicate a practice style and philosophy incompatible with the business objectives of University Care Plus. University Care Plus may determine, in its sole discretion, to decline to execute a Participating Physician Agreement or terminate an existing Participating Physician Agreement based upon this information.

1057

Attachment C
ANTITRUST POLICY

KLYHDAL:68.1/275892

## ANTITRUST POLICY AND PROCEDURE
## OF
## UNIVERSITY CARE PLUS

I.    Purpose of Managed Care Activities:

    A.    To facilitate managed care contracting by:

        1.    Offering Payors an advantage by providing a panel of physicians for participation in their managed care plans without the need for cumbersome, costly negotiations and other administrative costs with each individual provider.

        2.    Offering Payors a new product--a group of qualified participating physicians from a wide variety of specialties who have agreed to participate in UR, QA and credentialing programs established or adopted by the University Care Plus ("Corporation").

    B.    Payors are still free to negotiate and contract with individual physicians.

II.   Services of the Corporation:

    A.    In facilitating participation in managed care plans, the Corporation will:

        1.    Provide information to Payors regarding participating physicians' fees, which may include the usual and customary fees and the fees at which they have individually stated their general willingness to participate in managed care plans;

        2.    Maintain confidentiality of fee information by utilizing an independent non-physician consultant or employee who will not share fee information with competing physicians;

        3.    Report to Payor the non-price terms under which participating physicians have individually indicated they are generally willing to participate in managed care plans;

        4.    Allow any Payor to approach participating physicians directly and allow participating physicians to negotiate with Payors, subject to any employment constraints imposed on those physicians by their faculty or other employee status;

        5.    Encourage contractual relationships between Payors and participating physicians to provide covered services on terms acceptable to the Payor and participating physicians.

    B.    In any circumstances, the Corporation will:

        1.    Not promote, condone or participate in collective decisions by competing physicians to participate in or refuse Payor's fee-for-service plans;

        2.    Not dictate terms (price or otherwise) on which participating physicians will participate in Payor's fee-for-service plans; and.

        3.    Not share information among competing physicians as to terms (price or otherwise) on which they will contract or do business with any Payor's fee-for-service plan, other than disclosing the terms agreed to with a particular Payor in the course of negotiations as described above.

HLTHDAL-56.1/27689/2

1059

2. Each applicant shall be evaluated to determine if his or her participation enhances University Care Plus' ability to fulfill its business needs. The evaluation shall include, without limitation:

   a. Applicant's specialty;
   b. The need for a physician in a specific geographic area;
   c. The number of physicians necessary to service the population;
   d. The relationship of an applicant to other Participating Physicians; and
   e. Unique skills or characteristics such as foreign language proficiency or a female physician offering obstetrical or gynecological services when patient or payor demands indicate unmet needs for such physicians.

1060

## UNIVERSITY CARE PLUS
## POLICY AND PROCEDURE FOR GRIEVANCES AND
## APPEALS OF ADVERSE DETERMINATIONS

The purpose of this procedure is to offer a fair opportunity to any Participating Physician of University Care Plus (the "Corporation") to air related grievances or complaints or to appeal a decision by Corporation to terminate his or her participation in the Corporation.

1. **Applicability.** Whenever:

   a. A Participating Physician has a grievance or complaint regarding the operation of the Corporation, or

   b. The Board has under consideration a recommendation by the Participation Committee or other method of recommendation to terminate or sanction the participation of a Physician Participation for one or more of the specific reasons set out in the policies and procedures of Corporation,

the Board may offer the affected Participating Physician the opportunity to discuss the matter prior to final action. The Corporation Board may, suspend participation pending the outcome of the review and appeals process.

2. **Written Request.** Participating Physicians must submit a written request to appeal a recommendation to terminate participation to the Board in writing within forty-five (45) days of receiving notification of the adverse decision. Failure to submit such request during this period will result in waiver of any right to appeal. Participating Physicians who wish to air grievances or complaints must also submit a written request for review to the Board.

3. **Review Panel.** The review panel, comprised of either the Executive Committee or a special committee appointed by the Board at its discretion, will discuss the matter with the Participating Physician and report its findings to the entire Board.

4. **Procedure.**

   a. The review, whether for purposes of airing grievances and complaints or reviewing adverse membership determinations, is intended to offer the Participating Physician an opportunity to address any special circumstances that may apply, and to respond to questions and resolve any outstanding issues the review panel may have.

DGG41D4A 27688/2

   b. Because neither a review of a Participating Physician's grievance or complaint regarding the Corporation's operation nor the decision by Corporation to terminate the Participating Physician's participation in the Corporation will affect faculty status at University of Texas – Houston Health Science Center or the Participating Physician's privileges at any participating hospital or be reportable as a peer review action, the conduct of the interview will be informal in nature.

   A record of this informal review is not required, although it may be kept

Attachment A:          Fee Schedule(s)
                       *(indicate type(s) of Fee Schedule(s) attached hereto)*
                          X   Discounted Fee-for-service
                                   -AND/OR-
                          X   Capitated
Attachment B:          Physician Participation Criteria
Attachment C:          Antitrust Policy
Attachment D:          Grievance Policy


(Signature) _Jacu-Chen Huang_

(Name) _Dpt OB-Gyn, MSB 3-264_
       _6431 Fannin, Houston TX 77__

(Address) _713-792-5360_

(Telephone Number)


ACKNOWLEDGED AND ACCEPTED THIS
18TH DAY OF _April_ , 1996:

UNIVERSITY CARE PLUS
By:    _____
            L. Maximilian Buja, M.D.

       President

1062